UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

BRANDYWINE HEALTH SERVICES OF　　　　　　　　　　CASE NO. 09-16528-DWH
MISSISSIPPI, INC.

---

NORTHERN HEALTHCARE CAPITAL, LLC　　　　　　　　　　PLAINTIFF

VS.　　　　　　　　　　ADVERSARY PROCEEDING NO. _____

BRANDYWINE HEALTH SERVICES OF
MISSISSIPPI, INC. D/B/A CHOCTAW COUNTY
MEDICAL CENTER AND JEFFREY MORSE　　　　　　　　　　DEFENDANTS

## COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND FOR OTHER RELIEF

Northern Healthcare Capital, LLC ("NHC") alleges as follows in support of this Complaint:

### JURISDICTION AND VENUE

1. NHC is a limited liability corporation organized under the laws of New York with its principal place of business in New York.

2. Brandywine Health Services of Mississippi, Inc. d/b/a Choctaw County Medical Center ("Brandywine" or "Debtor") is a corporation organized under the laws of Mississippi with its principal place of business in Mississippi. The Debtor filed its voluntary Chapter 11 petition for relief before this Court on December 14, 2009 ("Petition Date").

3. Jeffrey Morse ("Morse") is an adult resident citizen of Maryland and is the Debtor's principal.

4. The series of transactions, occurrences and events made the basis of this action occurred in whole or in part in Choctaw County, Mississippi. Therefore, venue is therefore proper before this Court.

5. This court has jurisdiction over the parties hereto and subject matter herein pursuant to 28 U.S.C. §1334, 11 U.S.C. §§ 362, 554, Rule 7064 of the Federal Rules of Bankruptcy Procedure, along with other statutes and rules. This is a core proceeding as defined by 28 U.S.C. § 157(A)(B) and (O).

## FACTS

6. Effective January 1, 2007, Brandywine and NHC entered into a Credit and Security Agreement ("Security Agreement") setting out the terms and conditions upon which NHC provides financing for Brandywine's operations. Attached hereto as Exhibit "1" is a copy of the Security Agreement.

7. As further evidence and condition for advancement of operating funds Brandywine executed a Promissory Note in the principal amount of up to one million dollars ($1,000,000.00) which is also dated January 1, 2007. Attached as Exhibit "2" is a copy of the Promissory Note.

8. The Security Agreement grants NHC a security interest in all of Brandywine's present and future accounts, accounts receivable, contracts, chattel papers, deposit accounts, books and records and other personal property ("Cash Collateral") and fixtures, including all inventory, equipment, general intangibles, chattel paper, supporting obligations, investment property, instruments, securities, contract rights, stock in direct and indirect subsidiaries, machinery, deposit accounts, letter-of-credit rights, intellectual property, copyrights, trademarks, patents and trade styles and any and all additions to any of the foregoing and any and all

replacements and proceeds of any of the foregoing as set out in the Security Agreement. Contemporaneously, NHC perfected its security interest in the referenced collateral by filing UCC-1 Financing Statements. Copies of the Security Agreement and Financing Statements evidencing NHC's first, valid and perfected security interest in the collateral and Cash Collateral described herein are attached hereto as Collective Exhibit "3".

9. The methodology by which NHC provides operating funds to Brandywine in the form of secured advances is as set out pursuant to the terms and conditions of the Security Agreement. Stated summarily, advances are made by NHC to Brandywine secured by the collateral noted in the Security Agreement and Financing Statements referenced herein as Exhibits "1" and "3" for Brandywine's operations. The advances are calculated so that the amount outstanding does not exceed 85% of the reasonably estimated net collectible value of Brandywine's eligible accounts receivable. That determination is, in turn, based on a list of Brandywine's eligible accounts receivable which Brandywine provides to NHC on a weekly basis. Pursuant to the Security Agreement, Brandywine's indebtedness to NHC is reduced by payment of non-governmental accounts receivable into a commercial lock box controlled by NHC and by payment of governmental accounts receivable reflecting payments by Medicare and Medicaid to a lock box controlled by Brandywine which is then transferred by an automatic sweep from Brandywine to NHC. The process then repeats or recycles on an approximately weekly basis for an ongoing infusion of capital to Brandywine and repayment of Brandywine's indebtedness to NHC as noted hereinabove.

10. Pre-petition, commencing on or about October 22, 2009, Brandywine diverted non-governmental accounts receivable to a general operating account maintained at Regions Bank. Further, Brandywine altered the sweep provisions of the governmental lock box such that

funds owed to NHC pursuant to the terms and conditions of the Security Agreement are being paid to third parties. See e-mail from Jeffrey Morse to Israel Berstein noting Brandywine's alteration of the lock box, attached hereto as Exhibit "4".

11. In further contravention of the terms and conditions of the Security Agreement Brandywine has failed to pay payroll taxes such that the Internal Revenue Service has caused a federal tax lien to be filed with the Mississippi Secretary of State against Brandywine on or about September 11, 2009. A copy of the federal tax lien is attached as Exhibit "5".

12. The actions of Brandywine of diverting funds owed to NHC pursuant to the terms and conditions of the Security Agreement and allowing a federal tax lien to be filed against it imperiled NHC's security interest in accounts receivable and other assets of Brandywine. Accordingly, NHC filed its pre-petition complaint against the Debtor before the United States District Court for the Northern District of Mississippi ("District Court") seeking some of the relief sought herein ("District Court Action"). Thereafter on December 14, 2009 ("Petition Date"), Brandywine filed its voluntary Chapter 11 petition for relief pursuant to Title 11 of the United States Code.

## BREACH OF CONTRACT

13. Pre-petition, the Debtor and NHC announced the terms and conditions of a settlement to the District Court on its record. However, the formal settlement documents memorializing same were never executed nor any order(s) entered by the District Court. Although the Debtor has announced that its hospital facility has been closed by authorities of the State of Mississippi, it continues to maintain an operating convalescent home. Upon information and belief, without the use of NHC's Cash Collateral, the Debtor has no ability to fund the continued operations of the convalescent home. Thus, NHC seeks, inter alia, herein the issuance

of a temporary restraining order ("TRO") prohibiting the Debtor's use of NHC's Cash Collateral.[1]

14. NHC incorporates and adopts by reference each of the foregoing paragraphs of the Complaint.

15. The actions of Brandywine as noted hereinabove are in breach of the terms and conditions of the Security Agreement and amount to a default such that Brandywine is in breach of its contract with NHC.

16. The principal amount of sums presently due and owing NHC as reflected by advances made to Brandywine pursuant to the terms and conditions of the Security Agreement was $303,616.02 as of the Petition Date.

17. In addition to the principal sums due and owing NHC as referenced hereinabove, NHC is entitled to assessment of pre-petition interest and all costs of collection, including reasonable attorney's fees, pursuant to the terms and conditions of the Security Agreement and Promissory Note.

## BREACH OF FIDUCIARY DUTY

18. NHC incorporates and adopts by reference all allegations in the foregoing paragraphs of the Complaint.

19. As to all funds held by Brandywine in its general operating account at Regions, all funds deposited in the governmental lock box controlled by Brandywine or any other Cash Collateral of NHC, Brandywine acts as a fiduciary for and on behalf of NHC. To the extent Brandywine has used or uses any of NHC's Cash Collateral, it has or will breach fiduciary duties

---

[1] By letter dated December 23, 2009, counsel for NHC wrote counsel for the Debtor advising same that NHC does not consent to the use of its Cash Collateral. Further, contemporaneous to the filing of this complaint, NHC has filed its formal Emergency Motion for Order Prohibiting or Restricting Use of Cash Collateral, For Post-Petition Segregation and Accounting of Same.

owed by Brandywine to NHC. Moreover, without NHC's express authorization or order of this Court, any unauthorized use of NHC's Cash Collateral to fund its operations, including the convalescent home, constitutes a violation of Title 11 of the United States Code.

20. NHC accordingly avers that as a result of Brandywine's breach of fiduciary duties owed to it, it is entitled to an allowed claim against the Debtor's estate in the amount of $303,616.02 plus pre-petition interest and all costs and fees associated therewith.

## TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

21. NHC incorporates and adopts by reference of each of the foregoing paragraphs of the Complaint.

22. The federal tax lien attached as Exhibit "5" is noted to have been filed with the Mississippi Secretary of State on September 11, 2009. All accounts receivable generated by Brandywine from and after 45 days subsequent to the filing of the federal tax lien (i.e., October 26, 2009) potentially prime NHC security's interest in Brandywine's accounts receivable.

23. NHC avers on information and belief that as of October 22, 2009, when Brandywine unlawfully started to divert collections on its receivables away from NHC, there were approximately $650,000.00 in outstanding accounts receivable subject to collection to satisfy the secured indebtedness owed by Brandywine to NHC. NHC avers further that the amount of the federal tax lien is listed as approximately $100,000.00 and that Brandywine's monthly operating expenses averaged approximately $920,000 per month during the first six months of 2009 based on financial statements prepared by Brandywine and provided to NHC.

24. NHC avers, based on information and belief, that average monthly collections (and, therefore, the average monthly revenues) by Brandywine aggregated approximately $725,000 to $750,000 during the first six months of 2009.

25. If Brandywine is allowed to continue diverting accounts receivable paid to it through the governmental lock box to third parties other than NHC, or to continue to divert non-governmental accounts receivable to its general operating account or otherwise use NHC's Cash Collateral, the likelihood is substantial that NHC will not have an adequate remedy at law to collect sums owed it pursuant to the terms and conditions of the Security Agreement.

26. NHC seeks entry of a temporary restraining order directing that its Cash Collateral not be used to fund the Debtor's operations, specifically including the convalescent home absent order of this Court, that Brandywine's operating account at Regions be frozen, that all funds paid into the governmental lock box be paid to NHC as required by the terms and conditions of the Security Agreement and that Brandywine be enjoined from either diverting funds paid into the governmental lock box to third parties, or directing non-governmental funds into either its operating account with Regions Bank, or any other account at Regions or another financial institution or any account other than the commercial lock box controlled by NHC.

27. Brandywine was in clear pre-petition breach of contract and has, upon information and belief, breached its fiduciary duties owed to NHC by using its Cash Collateral to fund the convalescent home without order of this Court or authorization from NHC. Therefore the probability of success on the merits in regard to claims asserted by NHC and Brandywine is a near certainty. Because the federal tax lien likely primes NHC's security interest in accounts receivable produced from and after 45 days following September 11, 2009 (i.e., October 26, 2009), and because the amount of the federal tax lien and Brandywine's monthly operating expenses for just one month exceed the estimated value of collectible accounts receivable outstanding, if Brandywine uses the proceeds from the collection of the pre-October 26, 2009 receivables for its operations (or for any other purpose) there will be insufficient funds available

from the collection of the remaining receivables to provide sufficient funds for the repayment of amounts owed by Brandywine to NHC. Accordingly, the unauthorized use of NCH's Cash Collateral, will irreparably harm NHC. Considering the breach of contract and breach of fiduciary duties of Brandywine owed to NHC the balancing of hardship to the parties augers substantially in favor of NHC as does the public interest consideration to provide for enforcement of contractual and fiduciary duties owed in a commercial setting and not to penalize creditors who provide funding in good faith to healthcare providers.

28. For the reasons set out herein NHC seeks entry of a temporary restraining order and subsequent preliminary injunction for the relief noted hereinabove as contemplated by Rule 65 of the Federal Rules of Civil Procedure.

NHC therefore seeks the following relief:

1. Entry of a temporary restraining order and subsequent preliminary injunction directing that Brandywine's operating account at Regions be frozen, that all funds paid into the governmental lock box be paid to NHC as required by the terms and conditions of the Security Agreement and that Brandywine be enjoined from either diverting funds away from the governmental lock box or the non-governmental lock box (whether by depositing funds in an account other than the governmental lock box or the non-governmental lockbox, or by directing that funds in those lock boxes be deposited either in its operating account with Regions Bank, any other account at Regions Bank or another financial institution or any account other than an account controlled by NHC) or otherwise using Cash Collateral for any purpose other than repaying amounts owed to NHC pre-petition.

2. Further, for the reasons set forth herein, coupled with the fact that the hospital is now indefinitely closed, it is clear that the interests of NHC are not being adequately protected as

contemplated by 11 U.S.C. § 362(d)(1). Thus, the automatic stay presently protecting the Debtor's interests in NHC's Cash Collateral should immediately lift and moreover, should be abandoned from the Debtor's estate pursuant to 11 U.S.C. § 554. Thereafter, NHC should be permitted to take possession of enough liquidated or unliquidated pre-petition accounts receivable of the Debtor, liquidate same to the extent necessary and, moreover, apply them against the pre-petition indebtedness due NHC.

3.  Given the exigent nature of the circumstances attributable to this case, NHC requests an emergency hearing regarding the TRO feature of this complaint. NHC prays for such other general and specific relief as this court may deem just.

DATED: January 6, 2010.

NORTHERN HEALTHCARE CAPITAL,
LLC, PLAINTIFF

BY:  /s/ D. Andrew Phillips
D. ANDREW PHILLIPS, MB# 8509
JOHN S. HILL, MB#2451
ROSAMOND H. POSEY, MB#101247
MITCHELL, MCNUTT & SAMS, P.A.
POST OFFICE BOX 947
OXFORD, MS 38655
(662) 234-4845

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of January, 2010, a copy of the foregoing **Complaint for Temporary Restraining Order, Preliminary Injunction and For Other Relief** was served on the parties listed below by first-class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party:

Brandywine Health Services of Mississippi, Inc.
311 West Cherry Street
Ackerman, MS  39735

J. Walter Newman, IV, Esquire
248 E. Capitol Street, Suite 539
539 Trustmark Building
Jackson, MS  39201
stacyplee@mac.com

Mark Nolan Halbert, Esquire
Phelps Dunbar
P.O. Box 1220
Tupelo, MS  38802-1220
halbertm@phelps.com

U.S. Trustee
Office of the U.S. Trustee
100 West Capitol Street, Suite 706
Jackson, MS  39269
USTPRegion05.AB.ECF@usdoj.gov

DATED, this the 6th day of January, 2010.

/s/ D. Andrew Phillips
D. Andrew Phillips
Mitchell, McNutt & Sams, P.A.
P.O. Box 947
Oxford, MS  38655
662-234-4845

VERIFICATION

STATE OF NEW YORK

COUNTY OF Kings

The undersigned Tim Peters, Authorized Rep. of Northern Healthcare Capital, LLC, being duly sworn, avers that the information contained in the Complaint For Temporary Restraining Order, Preliminary Injunction and For Other Relief filed herein is true and correct as set out in same and avers further that he has full authority to act for and on behalf of Northern Healthcare Capital, LLC.

DATED: January 6th, 2010.

_____
TIM PETERS

SWORN TO AND SUBSCRIBED before me, this the 6 day of January, 2010.

_____
NOTARY PUBLIC

My Commission Expires:

JASON NOVATT
Notary Public, State Of New York
No. 01NO6043465
Qualified In Kings County
Commission Expires 06/19/2010