UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE:     BRANDYWINE HEALTH SERVICES          CASE NO. 09-16528-DWH
           OF MISSISSIPPI, INC.                CHAPTER 11

**EMERGENCY MOTION FOR ORDER PROHIBITING
USE OF CASH COLLATERAL, FOR POST-PETITION SEGREGATION AND
ACCOUNTING OF SAME AND FOR OTHER RELIEF**

Northern Healthcare Capital, LLC ("NHC") files this emergency motion for entry of an order prohibiting the debtor's, Brandywine Health Services of Mississippi, Inc. ("Debtor") use of NHC's cash collateral, for post-petition segregation and accounting of same and for other relief, and in support thereof would show as follows, to-wit:

1.  This Court has jurisdiction over the subject matter herein and the parties hereto pursuant to 28 U.S.C. §1334, 11 U.S.C. § 363, along with other related statutes and rules. This is a core proceeding as defined by 28 U.S.C. §157(b)(2)(A).

2.  On or about January 1, 2007, Debtor and NHC entered into a Credit and Security Agreement ("Security Agreement") setting out the terms and conditions upon which NHC provides financing for Debtor's operations. Attached as Exhibit "1" to NHC's separate adversary Complaint for Temporary Restraining Order, Preliminary Injunction and for Other Relief ("Adversary Complaint") is a copy of the Security Agreement.

3.  As further evidence and condition for advancement of operating funds Debtor executed a Promissory Note in the principal amount of up to one million dollars ($1,000,000.00) which is also dated January 1, 2007. Attached as Exhibit "2" to the Adversary Complaint is a copy of the Promissory Note.

4.  The Security Agreement grants NHC a security interest in all of Debtor's present and future accounts, accounts receivable, contracts, chattel papers, deposit accounts, books and

records and other personal property ("Cash Collateral") and fixtures, including all inventory, equipment, general intangibles, chattel paper, supporting obligations, investment property, instruments, securities, contract rights, stock in direct and indirect subsidiaries, machinery, deposit accounts, letter-of-credit rights, intellectual property, copyrights, trademarks, patents and trade styles and any and all additions to any of the foregoing and any and all replacements and proceeds of any of the foregoing as set out in the Security Agreement. Contemporaneously, NHC perfected its security interest in the referenced collateral by filing UCC-1 Financing Statements. Copies of the Security Agreement and Financing Statements evidencing NHC's first, valid and perfected security interest in the collateral described herein are attached as Collective Exhibit "3" to the Adversary Complaint.

5. The methodology by which NHC provides operating funds to Brandywine in the form of secured advances is as set out pursuant to the terms and conditions of the Security Agreement. Stated summarily, advances are made by NHC to Brandywine secured by the collateral noted in the Security Agreement and Financing Statements referenced herein as Exhibits "1" and "3" for Brandywine's operations. The advances are calculated so that the amount outstanding does not exceed 85% of the reasonably estimated net collectible value of Brandywine's eligible accounts receivable. That determination is, in turn, based on a list of Brandywine's eligible accounts receivable which Brandywine provides to NHC on a weekly basis. Pursuant to the Security Agreement, Brandywine's indebtedness to NHC is reduced by payment of non-governmental accounts receivable into a commercial lock box controlled by NHC and by payment of governmental accounts receivable reflecting payments by Medicare and Medicaid to a lock box controlled by Brandywine which is then transferred by an automatic sweep from Brandywine to NHC. The process then repeats or recycles on an approximately

weekly basis for an ongoing infusion of capital to Brandywine and repayment of Brandywine's indebtedness to NHC as noted hereinabove.

6. Pre-petition, commencing on or about October 22, 2009, Brandywine diverted non-governmental accounts receivable to a general operating account maintained at Regions Bank. Further, Brandywine altered the sweep provisions of the governmental lock box such that funds owed to NHC pursuant to the terms and conditions of the Security Agreement are being paid to third parties. See e-mail from Jeffrey Morse to Israel Berstein noting Brandywine's alteration of the lock box, attached as Exhibit "4" to the Adversary Complaint.

7. In further contravention of the terms and conditions of the Security Agreement Brandywine has failed to pay payroll taxes such that the Internal Revenue Service has caused a federal tax lien to be filed with the Mississippi Secretary of State against Brandywine on or about September 11, 2009. A copy of the federal tax lien is attached as Exhibit "5" to the Adversary Complaint.

8. The actions of Brandywine of diverting funds owed to NHC pursuant to the terms and conditions of the Security Agreement and allowing a federal tax lien to be filed against it imperiled NHC's security interest in accounts receivable and other assets of Brandywine. Accordingly, NHC filed its pre-petition complaint against the Debtor before the United States District Court for the Northern District of Mississippi ("District Court") seeking some of the relief sought herein ("District Court Action"). Thereafter on December 14, 2009 ("Petition Date"), Brandywine filed its voluntary Chapter 11 petition for relief pursuant to Title 11 of the United States Code.

9. Pre-petition, the Debtor and NHC announced the terms and conditions of a settlement to the District Court on its record. However, the formal settlement documents

memorializing same were never executed nor any order(s) entered by the District Court. Although the Debtor has announced that its hospital facility has been closed by authorities of the State of Mississippi, it continues to maintain an operating convalescent home. Upon information and belief, without the use of NHC's Cash Collateral, the Debtor has no ability to fund the continued operations of the convalescent home. Thus, NHC seeks, inter alia, herein the issuance of a temporary restraining order ("TRO") prohibiting the Debtor's use of NHC's Cash Collateral.[1]

10. The actions of Brandywine as noted hereinabove are in breach of the terms and conditions of the Security Agreement and amount to a default such that Brandywine is in breach of its contract with NHC.

11. The principal amount of sums presently due and owing NHC as reflected by advances made to Brandywine pursuant to the terms and conditions of the Security Agreement was $303,616.02 as of the Petition Date.

12. In addition to the principal sums due and owing NHC as referenced hereinabove, NHC is entitled to assessment of pre-petition interest and all costs of collection, including reasonable attorney's fees, pursuant to the terms and conditions of the Security Agreement and Promissory Note.

13. As to all funds held by Brandywine in its general operating account at Regions, all funds deposited in the governmental lock box controlled by Brandywine or any other Cash Collateral of NHC, Brandywine acts as a fiduciary for and on behalf of NHC. To the extent

---

[1] By letter dated December 23, 2009, counsel for NHC wrote counsel for the Debtor advising same that NHC does not consent to the use of its Cash Collateral. Further, contemporaneous to the filing of this complaint, NHC has filed its formal Emergency Motion for Order Prohibiting or Restricting Use of Cash Collateral, For Post-Petition Segregation and Accounting of Same.

Brandywine has used or uses any of NHC's Cash Collateral, it has or will breach fiduciary duties owed by Brandywine to NHC. Moreover, without NHC's express authorization or order of this Court, any unauthorized use of NHC's Cash Collateral to fund its operations, including the convalescent home, constitutes a violation of Title 11 of the United States Code.

14. NHC accordingly avers that as a result of Brandywine's breach of fiduciary duties owed to it, it is entitled to an allowed claim against the Debtor's estate in the amount of $303,616.02 plus pre-petition interest and all costs and fees associated therewith.

15. The federal tax lien attached as Exhibit "5" to the Adversary Complaint is noted to have been filed with the Mississippi Secretary of State on September 11, 2009. All accounts receivable generated by Brandywine from and after 45 days subsequent to the filing of the federal tax lien (i.e., October 26, 2009) potentially prime NHC security's interest in Brandywine's accounts receivable.

16. NHC avers on information and belief that as of October 22, 2009, when Brandywine unlawfully started to divert collections on its receivables away from NHC, there were approximately $650,000.00 in outstanding accounts receivable subject to collection to satisfy the secured indebtedness owed by Brandywine to NHC. NHC avers further that the amount of the federal tax lien is listed as approximately $100,000.00 and that Brandywine's monthly operating expenses averaged approximately $920,000 per month during the first six months of 2009 based on financial statements prepared by Brandywine and provided to NHC.

17. NHC avers, based on information and belief, that average monthly collections (and, therefore, the average monthly revenues) by Brandywine aggregated approximately $725,000 to $750,000 during the first six months of 2009.

18. If Brandywine is allowed to continue diverting accounts receivable paid to it

through the governmental lock box to third parties other than NHC, or to continue to divert non-governmental accounts receivable to its general operating account or otherwise use NHC's Cash Collateral, the likelihood is substantial that NHC will not have an adequate remedy at law to collect sums owed it pursuant to the terms and conditions of the Security Agreement.

19. NHC seeks entry of a temporary restraining order directing that its Cash Collateral not be used to fund the Debtor's operations, specifically including the convalescent home absent order of this Court, that Brandywine's operating account at Regions be frozen, that all funds paid into the governmental lock box be paid to NHC as required by the terms and conditions of the Security Agreement and that Brandywine be enjoined from either diverting funds paid into the governmental lock box to third parties, or directing non-governmental funds into either its operating account with Regions Bank, or any other account at Regions or another financial institution or any account other than the commercial lock box controlled by NHC.

20. Brandywine was in clear pre-petition breach of contract and has, upon information and belief, breached its fiduciary duties owed to NHC by using its Cash Collateral to fund the convalescent home without order of this Court or authorization from NHC. Therefore the probability of success on the merits in regard to claims asserted by NHC and Brandywine is a near certainty. Because the federal tax lien likely primes NHC's security interest in accounts receivable produced from and after 45 days following September 11, 2009 (i.e., October 26, 2009), and because the amount of the federal tax lien and Brandywine's monthly operating expenses for just one month exceed the estimated value of collectible accounts receivable outstanding, if Brandywine uses the proceeds from the collection of the pre-October 26, 2009 receivables for its operations (or for any other purpose) there will be insufficient funds available from the collection of the remaining receivables to provide sufficient funds for the repayment of

amounts owed by Brandywine to NHC. Accordingly, the unauthorized use of NCH's Cash Collateral, will irreparably harm NHC. Considering the breach of contract and breach of fiduciary duties of Brandywine owed to NHC the balancing of hardship to the parties augers substantially in favor of NHC as does the public interest consideration to provide for enforcement of contractual and fiduciary duties owed in a commercial setting and not to penalize creditors who provide funding in good faith to healthcare providers.

21. For the reasons set out herein NHC seeks entry of a temporary restraining order and subsequent preliminary injunction for the relief noted hereinabove as contemplated by Rule 65 of the Federal Rules of Civil Procedure.

NHC therefore seeks the following relief:

1. Entry of a temporary restraining order and subsequent preliminary injunction directing that Brandywine's operating account at Regions be frozen, that all funds paid into the governmental lock box be paid to NHC as required by the terms and conditions of the Security Agreement and that Brandywine be enjoined from either diverting funds away from the governmental lock box or the non-governmental lock box (whether by depositing funds in an account other than the governmental lock box or the non-governmental lockbox, or by directing that funds in those lock boxes be deposited either in its operating account with Regions Bank, any other account at Regions Bank or another financial institution or any account other than an account controlled by NHC) or otherwise using Cash Collateral for any purpose other than repaying amounts owed to NHC pre-petition.

2. Further, for the reasons set forth herein, coupled with the fact that the hospital is now indefinitely closed, it is clear that the interests of NHC are not being adequately protected as contemplated by 11 U.S.C. § 362(d)(1). Thus, the automatic stay presently protecting the

Debtor's interests in NHC's Cash Collateral should immediately lift and moreover, should be abandoned from the Debtor's estate pursuant to 11 U.S.C. § 554. Thereafter, NHC should be permitted to take possession of enough liquidated or unliquidated pre-petition accounts receivable of the Debtor, liquidate same to the extent necessary and, moreover, apply them against the pre-petition indebtedness due NHC.

3. Given the exigent nature of the circumstances attributable to this case, NHC requests an emergency hearing regarding the TRO feature of this complaint. NHC prays for such other general and specific relief as this court may deem just.

DATED: January 6, 2010.

Respectfully submitted,

NORTHERN HEALTHCARE CAPITAL, LLC

/s/ D. Andrew Phillips
D. ANDREW PHILLIPS (MSB #8509)
JOHN S. HILL (MSB #2451)
ROSAMOND H. POSEY (MSB #101247)
MITCHELL, McNUTT & SAMS, P.A.
P.O. Box 947
Oxford, MS 38655-0947
(662) 234-4845

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of January, 2010, a copy of the foregoing **Emergency Motion for Order Prohibiting Use of Cash Collateral, for Post-Petition Segregation and Accounting of Same and for Other Relief** was served on the parties listed below by first-class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party:

Brandywine Health Services of Mississippi, Inc.
311 West Cherry Street
Ackerman, MS  39735

J. Walter Newman, IV, Esquire
248 E. Capitol Street, Suite 539
539 Trustmark Building
Jackson, MS  39201
stacyplee@mac.com

Mark Nolan Halbert, Esquire
Phelps Dunbar
P.O. Box 1220
Tupelo, MS  38802-1220
halbertm@phelps.com

U.S. Trustee
Office of the U.S. Trustee
100 West Capitol Street, Suite 706
Jackson, MS  39269
USTPRegion05.AB.ECF@usdoj.gov

DATED, this the 6th day of January, 2010.

/s/ D. Andrew Phillips
D. Andrew Phillips