IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

IN RE:

| | |
|---|---|
| BRANDYWINE HEALTH SERVICES OF MISSISSIPPI, INC. d/b/a CHOCTAW COUNTY MEDICAL CENTER | CASE NO. 09-16528-DWH |
| **DEBTOR** | **CHAPTER 11** |

**EMERGENCY MOTION PURSUANT TO § § 361 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001 FOR INTERIM AND FINAL ORDERS
(1) AUTHORIZING USE OF CASH COLLATERAL;
(2) GRANTING ADEQUATE PROTECTION;
(3) SCHEDULING AND APPROVING METHOD OF NOTICE OF FINAL HEARING;
and (4) FOR RELATED RELIEF (NORTHERN HEALTHCARE CAPITAL LLC)**

COME NOW the above-captioned debtor and debtor in possession (collectively, the "Debtor"), by and through its undersigned attorney, and file this *Emergency Motion Pursuant to § § 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001 for Interim and Final Orders (1) Authorizing Use of Cash Collateral; (2) Granting Adequate Protection; (3) Scheduling and Approving Method of Notice of Final Hearing; and (4) for Related Relief (Northern Healthcare Capital LLC)* (the "Motion") with respect to Cash Collateral in which Northern Healthcare Capital LLC ("NHC") asserts security interest. The Debtor requests immediate relief through entry of an interim order in substantially similar form to that filed herewith (the "Interim Order"). In support of this Motion, the Debtor respectfully states as follows:

**JURISDICTION**

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.    The statutory bases for the relief requested herein are §§ 361 and 363 of Title 11 of

the United States Code (11 USC. § 101 *et seq.,* as amended, the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3. On December 14, 2009 (the "Petition Date"), the Debtor filed for relief under chapter 11 of the Bankruptcy Code. Since that time, the Debtor has continued to operate its businesses and manage its properties as debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

## RELIEF REQUESTED

4. The Debtor requests that the Court grant them (a) authorization and approval, pursuant to § 363 of the Bankruptcy Code and Bankruptcy Rule 4001(c)(2), to (i) use cash which may constitute Cash Collateral (as defined below) of NHC on an interim basis in accordance with the Interim Order and in accordance with the budget attached hereto as Exhibit A (as may be amended, supplemented, modified or extended from time to time as applicable, upon approval by the Court, the "Budget") (however, with respect to the Budget, on a weekly basis the Debtor seeks authority to exceed each line item in the Budget by up to ten percent (10%), so long as the aggregate amount of the Budget on a monthly basis is not exceeded by more than five percent (5%)), (ii) grant adequate protection liens to NHC and (iii) pending a final hearing on this Motion (the "Final Hearing"), obtain use of cash which may constitute Cash Collateral (as defined below) on a limited and interim basis through and including the date on which the Final Order is entered; and (b) in accordance with Bankruptcy Rule 4001(b)(2), that this Court schedule the Final Hearing and approve notice with respect thereto, all as more fully described in the proposed Interim Order.

5. Pursuant to § 363(c)(2) of the Bankruptcy Code, a debtor in possession may use cash collateral with court approval and after notice and a hearing. The Debtor seeks authority to use cash in bank accounts and proceeds of such cash (collectively, to the extent such cash constitutes Cash

Collateral, the "Cash Collateral") in which NHC asserts a security interest. Section 363(e) permits the Court to condition the use of such cash collateral "as is necessary to provide adequate protection of" the interests of NHC in the Cash Collateral. Further, pursuant to § 361, when a secured party's interest in cash collateral is entitled to adequate protection, such adequate protection may be provided by, among other things, an additional or replacement lien on assets generated post-petition "to the extent that such ... use ... results in a decrease in value of such entity's interest in the cash collateral."

6. NHC asserts liens and security interests on the accounts receivable of the Debtor and proceeds thereof (collectively, the "Accounts" or the "Collateral") as security for a Security Agreement extended to the Debtor in the maximum amount of $1,000,000 which NHC alleges on the Petition Date to be $303,616.02.[1]

7. The Debtor proposes to grant a replacement lien to NHC in accordance with §§ 361(2) and 552 of the Bankruptcy Code on post-petition assets, having the same respective priority as the pre-petition liens, to secure any post-petition diminution in value thereof to the extent such interests are entitled to adequate protection against such diminution under the Bankruptcy Code.

## DISCUSSION

### A. The Need for Use of Cash Collateral.

8. The Debtor has an immediate need to use Cash Collateral for the purpose of meeting necessary expenses incurred in the ordinary course of its business, including payroll, costs of continued provision for goods and services to the residents of its facility and the costs associated with its restructuring and these proceedings. Cash Collateral, consisting largely of future receipts

---

[1] This amount keeps changing by NHC but they contend it is only principal and does not include fees and interest. NHC has not factored any receivables since October.

from continued operations, is sufficient to fund the Debtor's continued operations during the period set forth in the Budget.

9. Additionally, the Budget provides for payment of restructuring costs, including periodic payments to professionals engaged in this chapter 11 case. As long as NHC is adequately protected, the Debtor's use of Cash Collateral to pay its professionals is allowed. *See In re Proalert, LLC*, 314 B.R. 436 (9th Cir. B.A.P. 2004) ("plain language of § 363 allows a debtor to use cash collateral [to pay its professionals] if the secured creditor's interest is adequately protected"); *In re Coventry Commons Assoc.*, 149 B.R. 109 (Bankr. E.D. Mich. 1992) (a debtor may use cash collateral to pay professional fees if the secured creditor is adequately protected, without regard to requirements of section 506 of the Bankruptcy Code); *In re Tri-County Water Ass'n., Inc.*, 91 B.R. 547, 550 (Bankr. D.S.D. 1988) (generally, only unencumbered assets may be used to pay administrative claimants, but such claims may be paid from collateral if they resulted in a direct benefit to the secured creditor, if the secured creditor consents or if the secured creditor is adequately protected). As discussed above, NHC is more than adequately protected; thus, payment of the Debtor's professionals' fees and expenses using the Cash Collateral is proper.

10. Without use of Cash Collateral, the Debtor will not be able to pay ordinary business expenses or pay its employees. Inability to use Cash Collateral on the basis set forth in the Budget would likely result in an immediate cessation of the ongoing operations of the Debtor's business and would most certainly cause irreparable harm to the Debtor's estate and the nursing home residents in the Debtor's facility. The lives of these residents are dependant on the Debtor to continue to provide necessary care and essential services, including administering medications, and the inability to access available cash with which to provide these services would impose upon them real and imminent harm. It is therefore critical that the Motion be heard and the relief requested herein be

granted on an emergency interim basis.

### B. Proposed Adequate Protection

11. Whether or not a creditor is adequately protected is determined on a case-by-case basis. *See In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987) (stating that the concept of adequate protection is a flexible one and that courts should determine whether it exists on a case-by-case basis); *In re Self*, 239 B.R. 877, 881 (Bankr. N.D. Tex. 1999) (determination of adequate protection is not an "exact science"; rather, it requires a court to balance all relevant factors); *In re JKJ Chevrolet, Inc.*, 190 B.R. 542, 545 (Bankr. E.D. Va. 1995) (stating that adequate protection is determined on a case-by-case basis).

12. Adequate protection exists by virtue of augmentation (or preservation) of the value of a secured creditor's collateral. *See In re Ralar Distribs., Inc.*, 166 B.R. 3, 6 (Bankr. D. Mass. 1994) ("[a]ctivities of a debtor can enhance collateral value and thereby provide adequate protection"); *In re T.H.B. Corp.*, 85 B.R. 192, 195 (Bankr. D. Mass. 1988) ("[T]he stream of cash collateral will likely remain at an approximate even level over a sustained period, with new proceeds replacing old, the constant nature of this stream gives the [secured lender] protection for its cash collateral."); *In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716-717 (Bankr. D. Del. 1996) (court found secured creditor was adequately protected given lack of evidence that collateral was diminishing, debtor had operated profitably and was projected to continue operating profitably).

13. The adequate protection provided above on account of the Debtor's use of Cash Collateral hereunder should be granted, effective immediately and without the necessity of the execution by the Debtor of financing statements, security agreements or otherwise, in accordance with § 361(2) of the Bankruptcy Code. The replacement security interests and liens (the "Adequate Protection Liens") in and upon post-petition Accounts on which NHC contends it held valid and

perfected liens as of the Petition Date and all proceeds, rents and products of all of the foregoing and all distributions thereon (collectively, the "Post-Petition Collateral"), should attach in the same respective priority it held prior to the Petition Date. The Adequate Protection Liens shall be subject only to valid, perfected, enforceable and nonavoidable liens and security interests superior in priority to those held by NHC on and prior to the Petition Date, and only to the extent such prepetition senior liens are not otherwise subject to avoidance or subordination. The Adequate Protection Liens are granted to secure the amount of any post-petition diminution in the value of NHC's interests in the Cash Collateral. Notwithstanding the foregoing or anything herein to the contrary, the Post-Petition Collateral shall not include any claims, causes of action and proceeds thereof arising under §§ 510, 544, 545, 546, 547, 548, 549, 550 and 551 of the Bankruptcy Code (collectively, "Avoidance Actions").

14. The Debtor asserts that all Cash Collateral now existing and hereafter acquired will be deposited and maintained by the Debtor pending disbursement in the ordinary course of business consistent with its pre-petition practice and the provisions of the Interim Order and the Budget.

15. The Budget includes the Debtor's aggregate projected sources and uses of cash over the Budget period. The Budget attached to the Motion demonstrates that the value of the Debtor's Cash Collateral should increase over the term of the Budget.

**C. Interim Approval of the Use of Cash Collateral Should Be Granted.**

16. Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to § 363 may not be commenced earlier than fifteen (15) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

17. Pursuant to Bankruptcy Rule 4001(b), the Debtor requests that the Court conduct a preliminary expedited hearing as soon as practicable (the "Preliminary Hearing") to enter the Interim Order authorizing the Debtor to use Cash Collateral in accordance with the Budget pending the Final Hearing.

18. The continued use by the Debtor of Cash Collateral is the best source of financing available to them at this time. The ability of the Debtor to finance, through the use of Cash Collateral, its ongoing operations as it reorganizes is in the best interests of the Debtor, all of its creditors and its estates and imposes no prejudice or harm upon NHC or any other party-in-interest.

19. The relief requested herein is necessary in order to avoid immediate and irreparable harm and prejudice to the Debtor's estate and to all parties in interest in the Debtor's chapter 11 case. The Debtor has an urgent and immediate need to use Cash Collateral to continue its business operations while prosecuting this chapter 11 case.

20. The interests of NHC are and will remain adequately protected pursuant to the relief provided in the Interim Order. As indicated by the Budget, the Debtor's operation will be cash flow positive during the period covered therein after payment of essential expenses and expenses related to the administration of this chapter 11 case.

21. The terms of the Interim Order are incorporated herein and made a part hereof by this reference. Pending the Final Hearing, this Motion should be granted on an interim basis, on the terms set forth in the Interim Order, in order to maximize the value of the estate and to prevent irreparable harm to the Debtor prior to the Final Hearing.

## REQUEST FOR FINAL HEARING

22. Finally, pursuant to Bankruptcy Rule 4001(c)(2), the Debtor requests that this Court set a date for the Final Hearing, fix the time and date for filing objections to the terms of the Interim

Order and the manner of service thereof, and approve the provisions for notice of such Final Hearing that are set forth in the Interim Order.

23. The Debtor requests that it be authorized to serve, upon execution and entry by the Court, a copy of the Interim Order by first-class United States Mail upon (a) NHC, (b) all other secured creditors of record, (c) the Office of the United States Trustee, (d) the Debtor's twenty (20) largest creditors on a consolidated basis as determined in accordance with Bankruptcy Rule 1007(d), (e) The Internal Revenue Service through Ralph Dean, United States Attorney and (f) any party having filed a request to receive service in the Debtor's chapter 11 case. The Debtor requests that the Court consider service of the Interim Order as set forth above to constitute sufficient notice of the Final Hearing under Rule 4001 of the Bankruptcy Rules.

## NOTICE

24. Notice of this Motion has been given to: (i) the United States Trustee; (ii) the Internal Revenue Service; (iii) NHC and its counsel; and (iv) all other secured creditors (Regions Bank, Toyota Financial Services and Trustmark National Bank). In light of the nature of the relief requested, the Debtor submits that no further notice is required.

WHEREFORE, the Debtor respectfully requests that this Court (a) conduct an emergency hearing on this Motion; (b) enter the Interim Order substantially in the form submitted herewith; (c) schedule a Final Hearing on the relief requested herein; and (d) grant such further relief as may be equitable and just.

Respectfully submitted this the 15th day of January, 2010.

        **BRANDYWINE HEALTH SERVICES**
        **OF MISSISSIPPI, INC. d/b/a**
        **CHOCTAW COUNTY MEDICAL CENTER**

        **/s/J. Walter Newman, IV**
        J. WALTER NEWMAN, IV

J. Walter Newman, IV, MSB No. 3832
Newman & Newman
248 East Capitol Street, Suite 539
Jackson, MS 39201
(601) 948-0586 - Telephone
(601) 948-0588 - Facsimile

**CERTIFICATE OF SERVICE**

I do hereby certify that on this day, a copy of the foregoing Pleading was served on the parties listed below by first-class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party:

Northern Healthcare Capital LLC
c/o D. Andrew Phillips
Mitchell, McNutt & Sams, P.A.
P. O. Box 947
Oxford, MS 38655-0947

Sammye Tharp, Esquire
Office of the United States Trustee
Suite 706 A. H. McCoy Federal Bldg.
100 West Capitol Street
Jackson, Mississippi 39269

Internal Revenue Service
100 W. Capitol Street
Jackson, MS 39269

Internal Revenue Service
c/o U. S. Attorney
900 Jefferson Avenue
Oxford, MS 38655

Regions Bank
29 West Main Street
Ackerman, MS 39735

Toyota Financial Services
P. O. Box 650686
Dallas, TX 75265

Trustmark National Bank
P. O. Box 1185
Jackson, MS 39215

This the 15th day of January, 2010.

　　　　　　　　　　　　　　　　　　　　　　　　**/s/J. Walter Newman, IV**
　　　　　　　　　　　　　　　　　　　　　　　　J. WALTER NEWMAN, IV