**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI**

| | |
|---|---|
| **IN RE: BRANDYWINE HEALTH SERVICES** | **CASE NO. 09-16528-DWH** |
| **OF MISSISSIPPI, INC.** | **CHAPTER 11** |

**NORTHERN HEALTHCARE CAPITAL, LLC'S RESPONSE
AND OBJECTION TO DEBTOR'S EMERGENCY MOTION PURSUANT TO §§ 361 AND
363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001 FOR INTERIM
AND FINAL ORDERS (1) AUTHORIZING USE OF CASH COLLATERAL; (2)
GRANTING ADEQUATE PROTECTION; (3) SCHEDULING AND APPROVING
METHOD OF NOTICE OF FINAL HEARING; and (4) FOR RELATED RELIEF [DK #56]**

Northern Healthcare Capital, LLC ("NHC") files this response and objection to the Emergency Motion Pursuant to §§ 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001 For Interim and Final Orders (1) Authorizing Use of Cash Collateral; (2) Granting Adequate Protection; (3) Scheduling and Approving Method of Notice of Final Hearing and (4) For Related Relief ("Emergency Motion") [DK #56] filed by the Debtor-in-Possession, Brandywine Health Services of Mississippi, Inc. ("Debtor"), and in support thereof would show as follows, to-wit:

1.  This Court has jurisdiction over the subject matter herein and the parties hereto pursuant to 28 U.S.C. §1334, 11 U.S.C. §§ 363 and 364, along with other related statutes and rules. This is a core proceeding as defined by 28 U.S.C. §157(b)(2)(A) and (G).

2.  On or about January 1, 2007, Debtor and NHC entered into a Credit and Security Agreement ("Security Agreement") setting out the terms and conditions upon which NHC provides financing for Debtor's operations. Attached as Exhibit "1" to NHC's separate adversary Complaint for Temporary Restraining Order, Preliminary Injunction and for Other Relief ("Adversary Complaint") is a copy of the Security Agreement.

3.  As further evidence and condition for advancement of operating funds Debtor executed a Promissory Note in the principal amount of up to one million dollars ($1,000,000.00) which is also dated January 1, 2007. Attached as Exhibit "2" to the Adversary Complaint is a copy of the Promissory Note.

4. The Security Agreement grants NHC a security interest in all of Debtor's present and future accounts, accounts receivable, contracts, chattel papers, deposit accounts, books and records and other personal property ("Cash Collateral") and fixtures, including all inventory, equipment, general intangibles, chattel paper, supporting obligations, investment property, instruments, securities, contract rights, stock in direct and indirect subsidiaries, machinery, deposit accounts, letter-of-credit rights, intellectual property, copyrights, trademarks, patents and trade styles and any and all additions to any of the foregoing and any and all replacements and proceeds of any of the foregoing as set out in the Security Agreement. Contemporaneously, NHC perfected its security interest in the referenced collateral by filing UCC-1 Financing Statements. Copies of the Security Agreement and Financing Statements evidencing NHC's first, valid and perfected security interest in the collateral described herein are attached as Collective Exhibit "3" to the Adversary Complaint.

5. The methodology by which NHC provides operating funds to Brandywine in the form of secured advances is as set out pursuant to the terms and conditions of the Security Agreement. Stated summarily, advances are made by NHC to Brandywine secured by the collateral noted in the Security Agreement and Financing Statements referenced herein as Exhibits "1" and "3" for Brandywine's operations. The advances are calculated so that the amount outstanding does not exceed 85% of the reasonably estimated net collectible value of Brandywine's eligible accounts receivable. That determination is, in turn, based on a list of Brandywine's eligible accounts receivable which Brandywine provides to NHC on a weekly basis. Pursuant to the Security Agreement, Brandywine's indebtedness to NHC is reduced by payment of non-governmental accounts receivable into a commercial lock box controlled by NHC and by payment of governmental accounts receivable reflecting payments by Medicare and Medicaid to a lock box controlled by Brandywine which is then transferred by an automatic sweep from Brandywine to NHC. The process then repeats or recycles on an approximately weekly basis for an ongoing infusion of capital to Brandywine and repayment of Brandywine's indebtedness to NHC as noted hereinabove.

6. Pre-petition, commencing on or about October 22, 2009, Brandywine diverted non-governmental accounts receivable to a general operating account maintained at Regions Bank. Further, Brandywine altered the sweep provisions of the governmental lock box such that funds owed to NHC pursuant to the terms and conditions of the Security Agreement are being paid to third parties. See e-mail from Jeffrey Morse to Israel Berstein noting Brandywine's alteration of the lock box, attached as Exhibit "4" to the Adversary Complaint.

7. In further contravention of the terms and conditions of the Security Agreement Brandywine has failed to pay payroll taxes such that the Internal Revenue Service has caused a federal tax lien to be filed with the Mississippi Secretary of State against Brandywine on or about September 11, 2009. A copy of the federal tax lien is attached as Exhibit "5" to the Adversary Complaint.

8. The actions of Brandywine of diverting funds owed to NHC pursuant to the terms and conditions of the Security Agreement and allowing a federal tax lien to be filed against it imperils NHC's security interest in Cash Collateral and other assets of Brandywine. Accordingly, NHC filed its pre-petition complaint against the Debtor before the United States District Court for the Northern District of Mississippi ("District Court") seeking some of the relief sought herein ("District Court Action"). Thereafter on December 14, 2009 ("Petition Date"), Brandywine filed its voluntary Chapter 11 petition for relief pursuant to Title 11 of the United States Code. Further, NHC filed its Emergency Motion to Prohibit Use of Cash Collateral, For Post-Petition Segregation and Accounting of Same and For Other Relief on January 6, 2010.

9. 11 U.S.C. §363(c)(2) prohibits the Debtor from using any Cash Collateral in its possession unless interested parties consent thereto or upon authorization by the Court. NHC does not consent to the Debtor's use of the Cash Collateral and the Court has not authorized the use of same.

10. The Debtor's proposed "budget", which is the means by which the Debtor proposes to provide adequate protection to use NHC's Cash Collateral, not only is flawed but

also does not provide adequate protection in compliance with the statutes cited herein. The proposal to grant NHC a replacement lien does not provide sufficient adequate protection to NHC since, inter alia, the Debtor's primary business enterprise, the Choctaw Medical Center, has been indefinitely closed by the State of Mississippi. Thus, a substantial source for the Debtor to regenerate its accounts receivable and correspondingly provide NHC any value and adequate protection for the continued use of its cash collateral has eviscerated with no solid timetable of resumption.

11. NHC avers on information and belief that as of October 22, 2009, when Brandywine unlawfully started to divert collections on its receivables away from NHC, there were approximately $650,000.00 in outstanding accounts receivable subject to collection to satisfy the secured indebtedness owed by Brandywine to NHC. NHC avers further that the amount of the federal tax lien is listed as approximately $100,000.00 and that Brandywine's monthly operating expenses averaged approximately $920,000 per month during the first six months of 2009 based on financial statements prepared by Brandywine and provided to NHC.

12. NHC avers, based on information and belief, that average monthly collections (and, therefore, the average monthly revenues) by Brandywine aggregated approximately $725,000 to $750,000 during the first six months of 2009.

13. Although the Emergency Motion seeks to grant NHC replacement liens in both pre- and post-petition property of the Debtor, as well as provide same an administrative expense claim for Cash Collateral used. Upon information and belief, the proof will show that the Debtor's expenses exceed its ability to generate new accounts receivable sufficiently enough to afford NHC any meaningful form of adequate protection. In short, at this early date, the value of the Collateral is presently unknown. As such, NHC expressly reserves herein the right to further respond or object to the continued use of its cash collateral should the Emergency Motion be preliminarily granted.

14. The Emergency Motion seeks a "carve out" of NHC's Cash Collateral for the use of professional fees and expenses. Absent a clear and prospective showing that the Debtor can adequately protect NHC's interests in its cash collateral, NHC objects to any professional "carve

out."

      15.    For other good and sufficient reasons to be assigned at a hearing regarding this matter.

WHEREFORE, NHC respectfully requests that should any order be entered preliminarily granting the Emergency Motion that same be consistent with the response contained herein. NHC prays for such other general and specific relief as this Court may deem just.

THIS, the 20th day of January, 2009.

                              Respectfully submitted,

                              NORTHERN HEALTHCARE CAPITAL, LLC

                    BY:  /s/ D. ANDREW PHILLIPS
                              D. ANDREW PHILLIPS (MSB# 8509)
                              JOHN S. HILL (MSB #2451)
                              ROSAMOND H. POSEY (MSB #101247)
                              MITCHELL, McNUTT & SAMS, P.A.
                              P.O. Box 947
                              Oxford, MS 38655-0947
                              (662) 234-4845

# **CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of January, 2010, a copy of the foregoing **Northern Healthcare Capital, LLC's Response and Objection to Debtor's Emergency Motion Pursuant to §§ 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001 For Interim and Final Orders (1) Authorizing Use of Cash Collateral; (2) Granting Adequate Protection; (3) Scheduling and Approving Method of Notice of Final Hearing and (4) For Related Relief** was served on the parties listed below by first-class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party:

Brandywine Health Services of Mississippi, Inc.
311 West Cherry Street
Ackerman, MS  39735

J. Walter Newman, IV, Esquire
248 E. Capitol Street, Suite 539
539 Trustmark Building
Jackson, MS  39201
stacyplee@mac.com

Mark Nolan Halbert, Esquire
Phelps Dunbar
P.O. Box 1220
Tupelo, MS  38802-1220
halbertm@phelps.com

U.S. Trustee
Office of the U.S. Trustee
100 West Capitol Street, Suite 706
Jackson, MS  39269
USTPRegion05.AB.ECF@usdoj.gov

DATED, this the 20th day of January, 2010.

/s/ D. Andrew Phillips
D. Andrew Phillips