**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**

**IN RE: BRANDYWINE HEALTH SERVICES OF MISSISSIPPI, INC.** **CH. 11 CASE NO:09-16528-DWH**

---

**CHOCTAW COUNTY, MISSISSIPPI'S EMERGENCY MOTION TO COMPEL DEBTOR TO ASSUME OR REJECT AMENDED LEASE AGREEMENT**

---

The Board of Supervisors of Choctaw County, Mississippi ("Choctaw County"), a creditor and party-in-interest in this proceeding, moves the Court on an emergency basis to compel the Debtor, Brandywine Health Services of Mississippi, Inc. ("Brandywine") to assume or reject its non-residential real property lease with Choctaw County. In support thereof Choctaw County would show as follows:

1. The Debtor, Brandywine, is a Chapter 11 debtor by virtue of its voluntary petition filed on December 14, 2009. No trustee or examiner has been appointed.

2. Brandywine is the lessee of an Amended Lease Agreement with Choctaw County ("Amended Lease"), pursuant to which Brandywine leased a twenty-five (25) bed rural hospital and skilled nursing facility adjacent to the hospital with seventy-three (73) authorized beds for subacute and other nursing care patients. A true and correct copy of the Amended Lease is attached hereto as Exhibit "A" and incorporated herein by reference.

3. As of the petition date, there were monetary and non-monetary defaults under the terms of the Amended Lease. Post-petition there are non-monetary defaults on the Amended Lease that cannot be cured. These defaults affect the health and welfare of the citizens of Choctaw County. Specifically, there is a post-petition default under the Amended Lease as a result of Brandywine's loss of its license to operate the twenty-five (25) bed rural hospital and the corresponding loss of its

Medicare provider number. Brandywine would have to submit to the application process for a new license with the Mississippi State Department of Health, and be granted such a license, before it could reopen and operate the hospital; there is no guarantee that a new license would be granted. The hospital has been closed almost six (6) weeks and Brandywine has taken no steps toward acquiring a new license, and there is no indication that it will.

4. Pursuant to paragraph 20 of the Amended Lease, "(iii) the taking, commencement or institution of any action or proceeding, including fast track proceedings, by any state or federal authority having jurisdiction over the Demised Premises as a health care facility to terminate or revoke any license, certification of Lessee which Lessor is not immediately notified or which is not resolved within fifteen (15) days for fast track proceedings or thirty (30) days for any other action or proceedings. . .." is a default. Further, pursuant to paragraph 41(a) of the Amended Lease, it is a default if "the acute care hospital, with laboratory and x-ray, an emergency room (on a 24-hour day basis), and outpatient treatment services . . . operations are ceased for a period of thirty (30) days." Both of these events will not be cured by Brandywine.

5. There is an immediate need for the residents of Choctaw County to have an acute care hospital. Brandywine's defaults under the Amended Lease and expressed intention not to reopen are detrimental to the citizens of Choctaw County.

6. Brandywine has indicated that it intends to continue operating the nursing home facility but not the hospital. Putting aside any issues with respect to whether Brandywine has any chance to reorganize without the cash flow generated from the hospital, Brandywine may not assume only a portion of the Amended Lease. Because the Amended Lease cannot be partially assumed, it must be rejected.

7. Even if the Debtor could partially assume the Amended Lease, pursuant to 11 U.S.C. § 365, the Debtor may not assume a lease agreement unless it cures or provides adequate assurance that it will promptly cure defaults under the lease. The failure to operate under the Amended Lease is a breach that cannot be cured by the Debtor and, in fact, the Debtor has indicated that it does not intend to cure the default. For this reason, the Amended Lease must be rejected.

8. In addition, Choctaw County is informed that the administrator for the nursing home resigned effective 12:30 p.m. on January 25, 2010. The health and welfare of the patients in the nursing home is at risk without an administrator. Further, the license for the facility is at risk without an administrator. Choctaw County requests an immediate hearing on this motion due to the critical issues related to patient care as a result of the resignation of the administrator.

9. In the event the Amended Lease is rejected, Choctaw County is prepared to operate the nursing home so that no patient care will be compromised during the interim period.

WHEREFORE, PREMISES CONSIDERED, Choctaw County respectfully requests that the Court compel the Debtor to reject the Amended Lease Agreement with Choctaw County. Choctaw County also prays for general relief.

Respectfully submitted this 25th day of January, 2010.

THE BOARD OF SUPERVISORS OF
CHOCTAW COUNTY, MISSISSIPPI

By: /s/ Jim F. Spencer, Jr.
Jim F. Spencer, Jr.

JIM F. SPENCER, JR. (MSB #7736)
PEYTON D. PROSPERE (MSB #4522)
WATKINS & EAGER PLLC
400 East Capitol Street
Jackson, MS 39201
(601) 965-1900

**CERTIFICATE OF SERVICE**

I, Jim F. Spencer, Jr., hereby certify that I have this day caused to be served by electronic mail a true and correct copy of CHOCTAW COUNTY, MISSISSIPPI'S EMERGENCY MOTION TO COMPEL DEBTOR TO ASSUME OR REJECT AMENDED LEASE AGREEMENT to the following counsel of record:

J. Walter Newman, IV - stacplee@mac.com

U.S. Trustee - Sammye S. Tharp - Sammye.S.Tharp@usdoj.gov

This 25th day of January 2010.

/s/ Jim F. Spencer, Jr.
Jim F. Spencer, Jr.



**AMENDED LEASE AGREEMENT**

Rec'd
10/25/05

**THIS LEASE**, effective as of the 1st day of June, 2005, by and between THE BOARD OF SUPERVISORS OF CHOCTAW COUNTY, MISSISSIPPI, a political subdivision of the State of Mississippi authorized to acquire, own, lease and dispose of properties for hospital and other healthcare purposes, having its principal office and place of business, and it mailing address at the Choctaw County Courthouse, P. O. Box 250, Ackerman, Mississippi 39735 (herein after referred to as the "Lessor"), and Brandywine Health Services of Mississippi, Inc., a corporation organized and existing under the laws of the State of Mississippi, having its principal office and place of business and its mailing address at 148 West Cherry Street, P. O. Box 1039, Ackerman, Mississippi 39735 (hereinafter referred to as the Lessee").

**WITNESSETH:**

**WHEREAS,** Lessor and Lessee entered into a Lease Agreement dated June 1, 2002; and

**WHEREAS,** Lessor and Lessee desire to substitute, exchange, supplant and incorporate its agreement between Lessor and Lessee into a new agreement, which shall become effective on the date herein above first mentioned; and

**WHEREAS,** Lessor owns that certain rural hospital having a licensed bed capacity of fifteen (15) beds for acute-care patients and five (5) swing beds; and

**WHEREAS,** Lessor also owns that certain skilled nursing facility which is adjacent to the Hospital Facility and in which has a licensed bed capacity of 73 beds for sub-acute and other nursing care patients (the "Licensed Nursing Home Bed Capacity;" the Licensed Hospital Bed Capacity and the Licensed Nursing Home Bed Capacity are herein collectively referred to as the "Licensed Bed Capacity") (the "Nursing Home"); and

**WHEREAS,** Lessor also owns or operates two (2) rural health clinics, one of which is located onsite at the Hospital Facility in Ackerman, Mississippi, and one of which is located offsite in Ackerman, Mississippi ( collectively, the "Clinics"); and

**WHEREAS,** Lessor desires to lease to Lessee, and Lessee desires to lease from Lessor, the real and chattel property of the Facility and the Clinics; and

**WHEREAS,** Lessor also desires that the Lessee assume certain obligations and arrangements make by the Lessor to provide Choctaw County Residents with emergency services;

**NOW, THEREFORE,** in consideration of the premises and of their mutual undertakings, the parties hereto agree as follows:

EXHIBIT
A

284

1. **Lease of Real, Personal and Chattel Property, Term.** Lessor, in consideration of the rents to be paid, and the terms, covenants, conditions and agreements set forth herein to be kept and performed by Lessee, does hereby agree to demise and let unto Lessee and Lessee, subject to and in reliance on the conditions, terms covenants, warranties and representations of Lessor contained herein, does hereby agree to lease from Lessor, the following described assets, rights, interests and other properties owned by Lessor and relating to the Facility (herein the "Demised Premises"):

(a) **Land:** The parcel or parcels of land more particularly described in **Exhibits A and B** attached hereto and made a part hereof (herein the "Owned Parcels");

(b) **Improvements:** All building, structures, fixtures and improvements erected or located on the Parcels, or affixed thereto (herein the "Improvements");

(c) **Appurtenances:** All tenements, hereditaments, rights, privileges, interests, easements and appurtenances belonging or in anywise pertaining to the Parcels and/or the Improvements (the Parcels, the Improvements and the aforesaid appurtenances thereto being herein referred to collectively as the "Real Property"); and

(d) **Tangible Personal Property:** All machinery and equipment, building materials, appliances, apparatus, motor vehicles, furniture, furnishings, fixtures, tools, instruments, parts, and other tangible personal property of every kind or nature whatsoever, owned, being purchased on contract or being leased by Lessor as of the date hereof, and located at or relating to the Facility, including inventories (collectively herein the "Personal Property""; such tangible personal property on the effective date hereof shall include, but not limited to, any and all items identified in the attached **Exhibit C** which is made a part hereof and incorporated herein by reference.

**TO HAVE AND TO HOLD** the Demised Premises unto Lessee, its successor and permitted assigns, upon and subject to all of the terms, covenants, conditions, conditional limitations and agreements herein contained, for a term commencing as of the day 1st day of June, 2005, (herein the "Commencement Date") and expiring on the last day of the two hundred, fortieth (240th) full calendar month following the Commencement Date, to wit: May 31, 2025, (herein the "Term"), or until said term is sooner terminated pursuant to any of the conditional limitations or other provisions hereof; provided, however, that Lessee shall have the right to extend the Term of this Lease for three (3) extension terms of five (5) years each (the "Extension Terms") by giving Lessor written notice thereof not less than ninety (90) days prior to the expiration of the Term (or any prior Extension Term). Such Extension Terms shall be upon rental to be negotiated at the time the extension is granted.

2. **Title to Demised Premises.** The Demised Premises shall be demised and let by Lessor unto Lessee free and clear of any and all liens, leases, mortgages, pledges, security interest, conditional sale agreements, charges, claims, options, and other encumbrances of any kind or nature whatsoever (collectively "Encumbrances"), except the following (collectively the "Permitted Encumbrances"):

(a) **Zoning Laws:** The provisions of all applicable zoning laws;

(b) **Taxes:** The liens of current real estate and personal property taxes not delinquent.

(c) Any liens or mortgages attached to Bounds clinic property.

Lessor warrants and will forever defend the right and title to the Demised Premises unto Lessee against the claims of all persons whomsoever, except for claims arising under and by virtue of the Permitted Encumbrances.

3. **Rent.** Lessee shall pay to Lessor rent for the Demised Premises an annual amount of $60,000.00, in equal monthly installments of $5,000.00 each. The first monthly installment of $5,000.00 shall be due and payable in advance on June 1, 2005, being the effective date of this Amended Lease Agreement. If, during the initial term of this Amended Lease Agreement, any additions to the facility or major repairs are approved by the parties, including a Gero-Psych unit, Lessor agrees to institute proceedings, if needed, to issue revenue bonds to help finance such improvements or major repairs. The repayment of any revenue bonds issued through the Lessor shall be the responsibility of the Lessee to pay.

4. **Taxes.** Subject to the final paragraph of this Section 4, Lessee shall, at its cost and expense, bear, pay and discharge, on or before the last day upon which the same may be paid without interest or penalty for late payment thereof, all taxes, assessments, sewer rents, water rents and charges, duties, imposition, license and permit fees, charges for public utilities of any kind, payments and other charges of every kind or nature whatsoever, ordinary or extraordinary, foreseen and unforeseen, general or special (collectively) herein "Impositions"), which shall , pursuant to present or future law or otherwise, prior to or during the term hereof, have been or be levied, charged, assessed or imposed upon, or grow or become due and payable out of or for, or become or have become a lien on, the Demised Premises or any part thereof, or the rents and income received by Lessor hereunder or received by Lessee from any permitted subtenants of the Demised Premises or of any part thereof, or any use or occupation of the Demised Premises. Lessee shall also bear, pay and discharge any and all income taxes assessed against Lessee, any franchise, estate, succession, inheritance or transfer taxes of Lessor, or any tax or charge in replacement or substitution of the foregoing or of a similar character.

2886

The parties agree and acknowledge that the Demised Premises is not subject to ad valorem property taxation

5. **Repair and Replacement.** The consideration for the reduced rental in this Amended Lease Agreement is the full and complete assumption by the Lessee herein of the total obligation to repair and maintain the demised premises in good repair, including any and all mandated upgrades to the facility by any regulatory agency of the State of Mississippi, or of the United States Government; and, Lessee shall at its own cost and expense, replace or repair the personal property used in the operation of the facility. As result of the aforesaid assumption, the Lessor herein shall not be responsible for said upkeep, maintenance or replacement costs associated with the demised premises or any personal property located therein.

All maintenance and repairs must be done in a good and workmanlike manner and must meet all building and zoning codes and all standards promulgated and regulations of all regulatory agencies of the facility whether state or federal.

Lessee acknowledges the items of Personal Property listed on **Exhibit C** attached hereto are the property of Lessor and that Lessee has only the right to the exclusive possession and use thereof as provided herein. Notwithstanding any contrary provision set forth herein, Lessee shall keep all of the aforesaid items of Personal Property in as good working order and condition as existed on the Commencement Date, and at the expiration of the Term of this Lease shall return and deliver all of such Personal Property to Lessor in as good order and condition as when received hereunder, reasonable wear and tear and damage by Acts of God or insurable peril excepted; provided, that Lessee agrees, if necessary for the proper operation of the Demised Premises, or to comply with or maintain all pertinent licensure, certification, insurance policy or other legal requirements and otherwise in accordance with customary practice in the industry, that Lessee shall replace any or all of the personal property listed on Exhibit "C", and such replacement personal property shall be the property of and owned by Lessor, subject to the terms and provisions of this lease. Upon expiration or termination of this Amended Lease Agreement all replacement personal property shall become the property of Lessor, and Lessee shall execute all documents and take any and all actions necessary to evidence such ownership.

All maintenance and repair work undertaken by Lessee shall be completed leaving the demised premises free of liens for labor and materials. It is the intent of the parties hereto that the demised premises be maintained at all times and returned upon the termination or expiration of this agreement, reasonable wear and tear excepted. Lessee hereby grants to Lessor the right to inspect and access the demised premises at all reasonable times, provided, however, that Lessor shall have do duty to conduct inspections unless requested to do so by Lessee.

6. **Compliance with Laws.** Lessor and Lessee mutually covenant and agree, Lessee as to its manner of use of the Demised Premises and its repair obligations and all other matters not related to the Lessee's operation of the Facility, to substantially perform and comply with Governmental Requirements now or hereafter enacted or promulgated, of ever government or municipality having jurisdiction over the Demised Premises, Lessee's operation of the Facility

as a licensed health care facility, and the franchises and privileges connected therewith, whether or not such Governmental Requirements so involved shall necessitate structural changes, improvements, interference with the use and enjoyment of the Demised Premises, replacements or repairs, extraordinary or ordinary, and Lessor or Lessee, as the particular circumstances may warrant, shall so perform and comply whether or not such Governmental Requirements shall now exist or shall hereafter be enacted or promulgated, and whether or not such Governmental Requirements are within the present contemplation of the parties hereto.

Each party shall have the right, provided it does so with due diligence and dispatch, to contest by appropriate legal proceedings, without cost or expense to the other party, the validity of any Governmental Requirements of the nature referred to above. The Party contesting such Governmental Requirements may postpone compliance with such law, rule, order, ordinance, regulation or requirement until the final determination of such proceedings so long as such postponement of compliance will not subject the Demised Premises to an encumbrance or the other party to any criminal prosecution. No provision hereof shall be construed so as to permit a party to postpone compliance with any Governmental Requirements if any sovereign, municipal or other governmental authority shall threaten to carry out or comply with the same or foreclose or sell any lien affecting all or any part of the Demised Premises that shall have arisen by reason of such postponement or failure of compliance. If requested by the other party, the party contesting such Governmental Requirement shall post a bond or other adequate security for the costs of compliance and pay monetary fines, penalties, damages, or other liabilities which might be imposed, in Lessor's sole judgment, in connection with such contest.

Notwithstanding any other provision of this Agreement to the contrary, each party shall inform the other party immediately by telephone, telecopy or telegraph of any action taken, commenced or instituted by and any state or federal authority having jurisdiction over the Demised Premises as a health care facility to terminate or revoke any license certification of such party. Such notice shall be given to Lessor at the address or telephone number set forth in Paragraph 42 herein.

7. **Alterations.** Except as may be required of Lessee by Paragraphs 5 and 6 above, Lessee shall not make any alterations or additions to the Demises Premises without Lessor's written approval, which approval may not be unreasonably withheld. Lessor shall not withhold written consent to minor alterations or additions or alterations or additions necessary in the reasonable opinion of Lessee to comply with applicable Governmental Requirements (including, without limitation, any conditions to a certification of need or exemption therefrom applicable to the Facility), to maintain or expand existing services to patients, to maintain licensure, or to maintain certification under the Medicaid or Medicare or any other public or private program now or hereafter applicable to the Demised Premises. Nothing herein shall be deemed to obligate Lessee to make alterations or additions constituting repairs or replacements required to be made by Lessor pursuant to Paragraphs 5 and 6, provided, however, that if Lessor fails to



perform its repairs and replacement obligation, Lessee shall have the right to do so at Lessor's expense and to offset the reasonable cost thereof against Rental or other sums due under this Lease.

8.    **Use of Demised Premises.**    Lessee may use the Demised Premises for healthcare and related purposes. Lessee shall not commit, or allow to be committed, any waste upon the Demises Premises, or any public or private nuisance. Lessee shall not use or keep or allow the Demised Premises or any portion thereof to be used or occupied for any unlawful purpose and shall not suffer any act to be done or any condition to exist within the Demised Premises or any portion thereof, or knowingly permit any article to be brought therein, which may be dangerous, unless safeguarded as required by law, or which may make void or voidable any insurance in force with respect thereto.

9.    **Protection Against claims by Public.**    During such period or periods of the term hereof as any portion of the Parcels shall be unenclosed by any walled structure, fence or gate, such portion shall be subject to such reasonable directions as Lessor may from time to time make or give to Lessee with respect to the maintenance and use thereof, for the purpose of Lessor's protection against possible claims of the public, as such. Lessee hereby acknowledges that Lessor does not hereby consent, expressly or by implication , to the unrestricted use or possession of the whole or any portion of the Demised Premises by the public, as such, and Lessee covenants and agrees that all such reasonable directions so given shall be deemed to be and become incorporated herein by reference and shall be fully and promptly performed and enforced by Lessee at its cost and expense. Lessor hereby warrants and represents to Lessee that the Demised Premises complies with all zoning and land use requirements, including, without limitation, parking, drainage, and utility requirements.

10.    **Independence of Demised Premises.**    Lessee shall not by act or omission permit any building or other improvement on premises not demised hereunder to rely on the Real Property or any part thereof or any interest therein to fulfill any municipal or governmental requirement, including without limitation, requirements for offsite parking, drainage, and utilities, and Lessee shall not take any action which shall cause an Improvement to rely on any premises not demised hereunder or any interest therein to fulfill any governmental or municipal requirement. Lessee shall not by act or omission impair the integrity of the Demised Premises as units separate and apart from all other premises. Any act or omission by Lessee which would result in a violation of any of the provisions of this Paragraph shall be void.

11.    **Mechanic's Liens.**    Notice is hereby given that Lessor shall not be liable for any work performed on premises on the Demised Premises for Lessee or any subtenant, or for any materials furnished or to be furnished at the Demised Premises for Lessee or any subtenant, and that no mechanic's or other lien for such work or materials shall attach to the reversionary or other interest of Lessor. If, in connection with any work being performed by Lessee or any

subtenant, or in connection with any material-being-furnished to Lessee or any subtenant, any mechanics or other lien or charge shall be filed or made against the Demised Premises or any part thereof, or if any such lien or charge shall be filed or made against Lessor as owner, then Lessee, at its cost and expense, will defend said action, shall cause the same to be canceled and discharged of record by payment thereof or filing a bond or otherwise, and shall also defend any action, suit or proceedings which may be brought for the enforcement of such lien or charge, and shall satisfy and discharge any judgment entered becoming final therein with thirty (30) days from the entering of such final judgment by payment thereof, or by filing of a bond, or by furnishing to Lessor and unconditional letter of credit issued by a bank and in an amount reasonably acceptable to Lessor, or otherwise. In the event of the failure of Lessee to discharge within such thirty (30) day period any lien, charge or judgment herein required to be paid or discharged by Lessee, Lessor may pay such item or discharge such liability by payment or bond or both, and Lessee shall repay Lessor, upon demand, any and all amounts paid by Lessor therefore, or by reason of any liability on any such bond, and also any and all incidental expenses, including reasonable attorneys' fees, incurred by Lessor in connection therewith.

12. **Liability Insurance.** At all times during the term hereof, Lessee shall, at its own cost and expense, provide and keep in force policies as follows:

(a) Comprehensive general public liability insurance including, without limitation upon the generality of the provisions of this Paragraph, elevator and boiler risks, protecting Lessor and Lessee against accident or disaster in or about the Demised Premises with limits not less than One Million Dollars ($1,000,000.00) combined single limit for bodily injury (including death) and One Million Dollars ($1,000,000.00) for property damage;

(b) Comprehensive automobile liability insurance, with limits not less than Three Hundred Thousand Dollars ($300,000.00);

(c) Professional liability insurance, with limits not less than One Million Dollars ($1,000,000.00); and

(d) Workers' compensation insurance, with limits not less than those required by law.

Certificates evidencing all such policies of insurance shall be delivered to Lessor. Such policies of insurance, as well as, any policies of insurance to be obtained by Lessee pursuant to Paragraphs 13 and 14 hereof, shall be issued by companies having a Best's rating of "A-1" or better. Such insurance coverage, as well as any insurance to be obtained by Lessee pursuant to Paragraphs 13 and 14 hereof, may be effected pursuant to a combination of primary and excess coverage insurance policies. Such insurance coverages may also be effected pursuant to blanket



coverage insurance policies which cover losses in addition to those required to be insured against hereunder.

If at any time Lessee shall neglect or fail, for fifteen (15) days after notice and demand given to Lessee, so to provide and keep in force insurance policies as aforesaid, or indemnify insurance policies pursuant to Paragraph 13 hereof or fire or other casualty insurance policies pursuant to Paragraph 14 hereof, or so to deliver to Lessor certificates evidencing any of such policies of insurance, as required by the provisions hereof, Lessor may effect such insurance as the agent of Lessee, by taking out a policy or policies in a company or companies satisfactory to Lessor, running for a period not exceeding one (1) year under any one (1) policy; and the amount of premium paid for such insurance by Lessor shall be paid by Lessee to Lessor upon demand; and Lessor shall not be limited in the proof of damages which Lessor may claim against Lessee arising out of or by reason of Lessee's failure to provide and keep in force general liability insurance policies as aforesaid to the amount of the insurance premium not paid or incurred by Lessee which would have been payable upon such insurance, but shall also be entitled to recover as damages for such breach the uninsured amount of any loss, liability, damage, claim, costs and expenses of suit, judgment and interest suffered or incurred by Lessor.

Lessee agrees that any insurance coverage required of it pursuant to this Lease shall also be subject to the following term and conditions:

      (a)    Insurance coverage shall be occurrence based. The Lessor, at its sole discretion, may approve liability policies issued on a "claims made" basis provided that, in Lessor's sole opinion, there is sufficient "tail" coverage;

      (b)    The Lessee shall furnish to Lessor copies of all policies of insurance required by this Lease which shall be delivered to the Lessor no later than each such policy's renewal date;

      (c)    The Lessor, or its successors and assigns, as their interest may appear shall be listed as an additional insured on the liability and indemnity policies required by this Lease.

    13.    At all times during the term hereof, Lessee shall, at its own cost and expense, provide and keep in force a policy or policies of insurance (which may be effected by blanket coverage insurance as provided hereof) insuring Lessee against all liability of Lessee. Certificates evidencing all such policies of insurance shall be delivered to Lessor. If at any time or times Lessee shall neglect or fail, for five (5) days after notice and demand given to Lessee, so to provide and keep in force insurance policies as aforesaid, or so to deliver to Lessor certificates evidencing any of such policies of insurance, as required by the provisions hereof, Lessor shall have all rights set forth hereof.

291

14. **Hazard Insurance:** At all times during the term or any extension hereof, Lessor shall maintain a hazard insurance policy in force and effect on the demised premises and personal property listed and contained in Exhibit "C" hereto. The Lessee shall within thirty (30) days of notice by Lessor, reimburse Lessor for the premium for said hazard insurance.

15. **Fire and Other Casualty:** If any Improvement or any Personal Property shall be damaged or destroyed by fire other casualty, then, irrespective of the cause and whether or not such damage or destruction shall have been insured, Lessee shall give prompt written notice thereof to Lessor, and Lessor shall proceed with diligence to carry out any necessary demolition and to restore, repair, replace and rebuild such improvements or Personal Property at Lessor's own cost and expense; provided, however, that insurance proceeds shall be made available for such restoration and rebuilding. If, as a result of the actions of any Fee Mortgagee or otherwise, insurance proceeds are not made available to the Lessor, and if the Lessor is unable after reasonable diligent efforts to secure and provide replacement funds, the Lessee shall have the right to terminate this Lease without further liability on the part of Lessee or Lessor unless the unavailability of such insurance proceeds is the result of Lessor's acts or omissions. If at any time Lessor shall fail or neglect to supply sufficient workmen or sufficient materials of proper quality, or fail in any other respect to prosecute such work of demolition, restoration, repair, replacement or rebuilding with diligence and promptness, then Lessee may give Lessor notice of such failure or neglect, and, if such failure or neglect continues for twenty (20) calendar days after such notice, then Lessee, in addition to all other rights which Lessee may have, including, with limitation, the right to cancel and terminate this Lease, may enter upon the Demised Premises, provide labor and/or materials, cause the performance of any contract, and/or do such other acts and things as Lessee, in consultation with Lessor, may deem advisable to prosecute such work. All costs and expenses incurred by Lessee in carrying out such work shall be borne by Lessor and shall be payable by Lessor to Lessee upon demand, which demand may be made by Lessee from time to time as such costs and expenses are incurred, in addition to any and all damages to which Lessee shall be entitled hereunder.

Rent shall abate hereunder as of the date of damage or destruction in proportion to the percentage of the Demised Premises thereby rendered unusable (in Lessee's sole opinion). Lessor shall in such event look solely to proceeds of its insurance (including its loss of rents coverage). Any proceeds of loss of rents insurance received by Lessor by reason of such damage or destruction shall be applied by Lessor to the payment of Rent which would otherwise be due from Lessee under paragraph 3 hereof. Impositions payable by Lessee under paragraph 4 hereof and premiums for any insurance required to be maintained by Lessee hereunder. In the event rent insurance proceeds received by Lessor are insufficient to pay the same or for any reason such rent insurance proceeds are not actually applied by Lessor to the payment of such amounts, Lessor shall nevertheless have no claim against Lessee for Rental abated hereunder. Any funds received from insurance proceeds for loss of use and/or loss of profits payable under the terms of

292

any insurance policy shall be the sole funds of the Lessee. Any of these funds received by Lessor will within ten (10) days from receipt be paid to Lessee.

16. **Environmental Matters.**

(a) Lessor hereby warrants and represents to Lessee that: the Demised Premises are in compliance with all Federal, state and local laws and ordinances to clean air, water, waste disposal, toxic substances and other environmental regulations, to the best of its information and belief. The Demised Premises are in compliance with all laws and ordinances relating to occupational health and safety. During the period of Lessor's ownership of the Demised Premises, Lessor has not caused or permitted the Demised Premises to be used, to generate, manufacture, refine, transport, treat, store, handle, dispose, transfer, produce or process "Hazardous Materials" (as hereafter defined) on or offsite of the Demised Premises, nor have any "Hazardous Materials Claims" (as hereinafter defined) been made against Lessor to Lessor's knowledge in respect of the Demised Premises. To Lessors knowledge, there has not been incorporated into the Demised Premises, and it does not contain, urea-formaldehyde, and other known building products which may be harmful or injurious to human health or constitute Hazardous Materials. No underground storage tank ("UST's") exist on the Demised Premises and if any UST's formerly existed on the Demised Premises, such UST's have been removed and any contamination of soils or ground water has been fully remediated in accordance with applicable Governmental Requirements. All closure requirements for such UST's have been fulfilled.

"Hazardous Material(s)" shall be defined as flammable, explosives, radioactive materials, or hazardous, toxic or dangerous waste, substances of related material including, but not limited to, substances defined as such in (or for purposes of) the Comprehensive Environmental Response, Compensation, and Liability Act, as amended 42 U.S.C. Sections 9601, et seq.; The Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq.; The Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq.; those substances defined as hazardous or toxic under any other federal, state or local statute, relating to, or imposing liability or standards of conduct concerning, any hazardous, toxic and dangerous waste, substance or material, as now or at any time hereafter in effect.

(b) Lessee hereby indemnifies and agrees to defend, protect and hold the Lessor, any successor or successors to Lessor's interest in and to the Demised Premises, and any mortgagee on the Lessor's interest in and to the Demised Premises harmless from and against any and all losses, liabilities, fines, charges, damages, injuries, penalties, response cost, expenses and claims of any and every kind whatsoever paid, incurred or suffered by, or asserted against, the Lessor including, with limitation, (i) all consequential

293

damages; (ii) the costs of ~~any required or necessary~~ cleanup or detoxification of the Demised Premises, and the preparation and implementation of any closure, remedial or other required plans; and (iii) all reasonable costs and expenses incurred by Lessor in connection with clauses (i) and (ii), including, but not limited to, reasonable attorneys' fees for, with respect to, or as a direct or indirect result of the presence on or under, or the escape, seepage, leakage, spillage, discharge, emission, or actual threatened release of any Hazardous Material (as herein defined) from the Demised Premises by the Lessee (including, without limitation, any losses, liabilities, damages, injuries, costs, expenses, or claims asserted or arising under any federal or state or local statute, law, ordinance, code, rule, regulation, order or decree regulating, relating to, or imposing liability or standard of conduct concerning any Hazardous Material), to the extent caused by, or within the control of , Lessee, or any employees, agents, contractors or subcontractors of Lessee, or any third persons, occupying or present on the Demised Premises, during the period of ownership, operation or control of the Demised Premises by Lessee, unless such activities were or will be undertaken in accordance with applicable laws, regulations, codes or means. The warranties, representations and indemnities made by Lessee in this section are expressly agreed by Lessor and Lessee to survive the termination of this Lease Agreement.

Notwithstanding anything to the contrary herein, Lessee shall have no liability or responsibility to remediate, except as may be expressly provided herein, with respect to any Hazardous Material which Lessor fails to prove has its origin on the Demised Premises after the Commencement Date of this Lease and during Lessee's possession and control of the demised Premises(whether directly or through a subtenant's occupancy thereof).

(c) Lessee shall keep and maintain the Demised Premises in compliance with, and shall not cause or permit the Demised Premises to be violation of, any federal, state or local laws, ordinances, statutes or regulations relating to industrial hygiene or to the environmental conditions on, under or about the Demised Premises including, but not limited to, soil and groundwater conditions. Lessee shall not use, generate, manufacture, store or dispose of on, under or about the Demised Premises or transport to or from the Demised Premises any Hazardous Material, except in compliance with applicable "hazardous Materials Laws" (as defined below). Lessee hereby agrees at all times to comply fully and in a timely manner with, and to cause all of its employees, suppliers, contractors, and subcontractors and any other persons occupying or present on the Demised Premises to so comply with, all applicable federal, state and local laws, regulations, guidelines, codes, statutes, and ordinances applicable to the use, generation, handling, storage, treatments, transport and disposal of any Hazardous Material now or hereafter located or present on or under the Demised Premises.

294

(d)    Lessee shall immediately advise Lessor in writing of (i) any and all enforcement, cleanup, removal or other governmental or regulatory actions instituted, completed or threatened pursuant to any applicable federal, state or local laws, ordinances, or regulations relating to any Hazardous Material affecting the Demised Premises ("Hazardous Material Laws"); (ii) all claims made or threatened by any third party against Lessee relating to damage, contribution, cost recovery compensation, loss or injury resulting from any Hazardous Material affecting the Demised Premises (the matters set forth in clauses (i) and (ii) above are hereinafter referred to as "Hazardous Materials claims"); and (iii) Lessee's discovery of any occurrence or condition on the Demised Premises or any real property under adjoining or in the vicinity of the Demised Premises or to be otherwise subject to any restrictions on the ownership, occupancy, transferability or use of the property under any Hazardous Materials Laws.    Lessor shall have the right, but not the obligation, to join and participate in, as a party if it so elects, any legal proceedings or actions initiated in connection with any Hazardous Materials Claims.

(e)    Without Lessor's prior written consent, Lessee shall not take any remedial action in response to the presence of any Hazardous Materials on, under, or about the Demised Premises, nor enter into any settlement agreement, consent decree, or other compromise in respect to any Hazardous Materials Claims, which remedial action, settlement, consent or compromise might, in Lessor's interest in the reversion; provided, however, that Lessor's prior consent shall not be necessary in the event that the presence of any Hazardous Material on, under, or about the Demised Premises either poses an immediate threat to the health, safety or welfare of any individual or is of such that an immediate remedial response is necessary and it is not reasonable possible to obtain Lessor's consent before taking such action, provided that in such event Lessee shall notify Lessor as soon as practicable thereafter of any action so taken.    Lessor agrees not to withhold it consent, where such consent is required hereunder, if either (i) a particular remedial action is ordered by a court of competent jurisdiction, or (ii) Lessee establishes to the reasonable satisfaction of Lessor that there is no reasonable alternative to such remedial action which would result in less impairment of Lessor's security hereunder or of Lessor's interest in the reversion.

17.    **Assignment and Subletting.**    Lessee may not assign this Lease or any interest herein, or make any sublease of all or any part of the Demised Premises, without Lessor's prior written consent; however, Lessor may not arbitrarily or unreasonable withhold its consent.

In the event of a termination hereof, each subtenant of space within the Demised Premises shall attorn to the Lessor unless the Lessor shall, at the Lessor's option, elect to dispossess such subtenant or otherwise terminate the sublease held by such subtenant. Each subtenant who hereafter subleases space within the Demised Premises shall be deemed to have

agreed to the provisions of this Paragraph.

Lessee hereby assigns to Lessor the right, following any default for payment of rent by Lessee hereunder which is not cured by Lessee within any applicable cure period, to collect from any and all subtenants all rents and other sums payable by them, and to apply the same to the payment of Rent and all other amounts payable by Lessee hereunder, and any balance shall be paid over to Lessee; but no exercise by Lessor of rights under this Paragraph shall be deemed a waiver by Lessor of any other rights hereunder or deemed an acceptance by Lessor of such subtenant or an acquiescence by Lessor to the occupancy of any part of the Demised Premises by such subtenant or a release of Lessee from the performance of any of the obligations of Lessee hereunder.

18. **Bankruptcy.** If at any time during the term hereof there shall be filed by or against Lessee in any court or other tribunal pursuant to any statute or other rule of law, either of the United States or of any state or of any other authority now or hereafter exercising jurisdiction, a petition in bankruptcy or insolvency proceedings or for reorganization or for the appointment of a receiver or trustee of all or substantially all of Lessee's property or if Lessee makes a general assignment for the benefit of creditors then, subject to the provisions of this Paragraph 20, this Lease may, at the option of the Lessor to be exercised by thirty (30) days written notice to Lessee, be canceled and terminated, and in that event neither Lessee nor any person claiming through or under Lessee by virtue of any statute or other rule or of an order of any court or other tribunal shall be entitled to possession or to remain in possession of the Demised Premises or any part thereof but shall forthwith quit and surrender the Demised Premises; provided, however, that if any such petition shall be filed against Lessee and if in good faith Lessee shall promptly thereafter commence and diligently prosecute any and all proceedings appropriate to secure the dismissal of such petition, Lessor's right to cancel and terminate this Lease by reason of the filing of such petition shall be suspended during such period as said proceedings for the dismissal of such petition shall continue. Any provision of this Paragraph 20 providing for the suspension of Lessor's right to cancel and terminate pursuant to this paragraph 20, and shall not be deemed to suspend or otherwise restrict Lessor's right to cancel and terminate this Lease, in the event of a default by Lessee under any other paragraph hereof pursuant to Paragraph 22 hereof or otherwise.

In the event of the termination hereof pursuant to Paragraph 22, Lessor shall forthwith at Lessor's option, notwithstanding any other provision hereof to the contrary, be entitled to recover from Lessee, in addition to any other proper claims for rent and other sums of money payable hereunder, as and for liquidated damages, a sum equal to the amount by which the Rent reserved under Paragraphs 3 and 4 hereof for the unexpired portion of the term hereof exceeds the net rental value of the Demised Premises at the time of such termination for the said unexpired portion of the term hereof, both discounted at the rate of eight percent (8%) per annum to their present worth. Nothing herein contained shall limit or prejudice the right of Lessor to prove or

296

obtain as liquidated damages by reason of a termination hereof pursuant to Paragraph 22 an amount equal to the maximum allowed by any statute or other rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved, whether or not such amount be greater than, equal to or less than the amount of the damages referred to above.

19. **Access to Project; Books, Records, Accounts and Annual Reports.** Lessee shall keep and maintain or shall cause to be kept and maintained, at Lessee's cost and expense and in accordance with sound accounting practice, proper and accurate books, records and accounts reflecting all items of income and expense in connection with the operation of the Facility or in connection with any services, equipment or furnishings provided in connection with the operation thereof. Lessee will in the event of default in payment of Rent and default is not cured within time prescribed then to furnish to Lessor on or before April 30th of each year, for the preceding calendar year, a balance sheet, profit and loss statement, and all supporting schedules covering operation of the Facility.

20. **Default; Termination.** If at any time during the term hereof (i) Lessee shall default in the payment of any Rent or of any other sum of money whatsoever which Lessee shall be obligated to pay under the provisions hereof for thirty (30) days after written notice and demand, or (ii) Lessee shall default in the performance or observance of any of the other terms, covenants, conditions or agreements hereof for thirty (30) days after written notice and demand for cure, or if such default shall be of such a nature that the same cannot practicably be cured within said thirty (30) day period, Lessee shall not within said thirty (30) day period commence with due diligence and dispatch to cure and perform such defaulted term, covenant, condition or agreement, or Lessee shall within said thirty (30) day period commence with due diligence and dispatch to cure and perform such defaulted term, covenant, condition or agreement but shall thereafter fail or neglect to prosecute and complete with due diligence and dispatch the curing and performance of such defaulted term, covenant, condition or agreement, or (iii) the taking, commencement or institution of any action or proceeding, including fast track proceedings, by any state or federal authority having jurisdiction over the Demised Premises as a health care facility to terminate or revoke any license certification of Lessee of which Lessor is not immediately notified or which is not resolved within fifteen (15) days for fast track proceedings or thirty (30) days for any other action or proceeding, or (iv) the receipt by Lessee of a Level A or higher deficiency on any licensure inspection or survey of the Demised Premises which (unless contested in good faith) is not resolved by corrective action plan or otherwise within a period of twenty (20) days (or such longer period as may be permitted by the applicable regulatory agency); THEN AND IN ANY SUCH CASE, if such default shall be continuing, Lessor, at Lessor's option, may elect to terminate this Lease at any time by giving ten (10) days notice in writing to Lessee, electing to terminate this Lease, and the term hereof shall expire by limitation at the expiration of said ten (10) days notice as fully and completely as if said date were the date herein originally fixed for the expiration of the term hereof, and Lessee thereupon quit and peacefully surrender the Demised Premises to Lessor, without any payment therefore by

297

Lessor, and Lessor, upon the expiration of said- ten-(10)-days notice, or at any time thereafter may re-enter and remove all persons and property therefrom, either by summary proceedings or by any suitable action or proceeding at law, or by force or otherwise, without being liable to indictment, prosecution or damages therefore, and may have, hold and enjoy the Demised Premises.

If Lessor shall obtain possession of the Demised Premises by reason of or following any default of Lessee, then Lessee shall pay Lessor on demand all reasonable expenses incurred by Lessor in obtaining possession and in altering, repairing and putting the Demised Premises in same condition as at beginning of this lease any other reasonable expenses and Lessee further agrees to pay to Lessor upon the rent days specified herein in each month following any termination hereof by reason of a default of Lessee hereunder, until the end of the period which would have constituted the Term hereof (whether or not Lessor shall have terminated this Lease), the Rent and all other sums of money whatsoever which would have been payable by Lessee during such period, deducting only the net amount of rent, if any, which Lessor shall actually receive (after deducting therefrom all reasonable expenses and costs of operation and maintenance of the Demised Premises) from and by any reletting of the Demised Premises, and Lessee hereby agrees to be and remain liable for all sums aforesaid as well as for any deficiency therein. Lessor shall have the right from time to time to bring and maintain successive actions or other legal proceedings against Lessee for the recovery of such amounts, which liability it is expressly covenanted shall survive the issuance of any warrant of dispossess or other court process. Nothing herein contained shall be deemed to require Lessor to wait to bring any such action or other legal proceedings until the date when this Lease would have expired had there been no such default by Lessee. In reletting the Demised Premises as aforesaid, Lessor may make leases and lettings of the whole or less than the whole of the same, for a term or terms greater or less than the term hereof, and for a rental or rentals and upon such terms, covenants, conditions, agreements and provisions as Lessor may elect in its sole discretion.

No receipt of moneys by Lessor from Lessee after a termination hereof by Lessor shall reinstate, continue or extend the Term hereof or affect any notice theretofore given to Lessee, or operate as a waiver of the right of Lessor to enforce the payment of rent when due or thereafter falling due, it being agreed that after the commencement of possession of the Demised Premises, or after final order or judgment for possession of the Demised Premises, Lessor may demand, receive and collect any moneys due or thereafter falling due without in any manner affecting such suit, order or judgment; all such monies collected being deemed payments on account of the use and occupation of the Demised Premises or, at the election of Lessor, on account of Lessee's liability hereunder. Lessor shall have, receive and enjoy, as Lessor's sole and absolute property, any and all sums collected by Lessor as rent or otherwise upon reletting the Demised Premises after Lessor shall resume possession thereof as hereinbefore provided, including, without limitation upon the generality of the foregoing, any amounts by which the sum or sums collected exceed the continuing liability of Lessee hereunder.

298

21. **Lessor Default.** In the event Lessor shall default in the performance of any of the terms and provisions of this Lease and shall fail to cure such default within thirty (30) days after written notice and demand from Lessee, Lessee shall have the right, at its option, to exercise one or more of the following remedies: (a) to terminate this Lease and recover against Lessor for all damages, general, special and consequential, incurred as a proximate result of Lessor's breach and termination; (b) to do and perform the act or action required of Lessor under this Lease and to offset against Rental and other sums payable by Lessee any and all costs of Lessee's performance; (c) to proceed with an action, proceeding or suit at law or in equity, seeking damages or equitable relief (including, in an appropriate case, an injunction, a decree of specific performance, or a declaratory judgment). Such remedies are cumulative of any and all other rights and remedies available to Lessee under this Lease or otherwise.

22. **Injunction.** Each party, at its option, in addition to any other rights reserved to it, and notwithstanding the concurrent pendency of other proceeds between Lessor and Lessee, shall have the right at all times during the term hereof to restrain by injunction any violation or attempted violation by the other party of any of the terms, covenants, conditions or agreements hereof, and to enforce by injunction any of the terms, covenants, conditions and agreements thereof.

23. **No Merger.** In no event shall leasehold in the Demised Premises created hereby, or the rights of Lessee hereunder, merge with any interest, estate or rights of Lessor in or to the Demised Premises, except by Lessor's written declaration of such merger, it being understood that such leasehold and the rights of Lessee hereunder shall be deemed to be separate and distinct from Lessor's interest, estate and rights in and to the Demised Premises, notwithstanding that any such interests, estates or rights shall at any time or times be held by or vested in the same person.

24. **Definition of "Lessor" and "Lessee".** The terms "Lessor" and "Lessee" as used herein shall at any given time mean the persons who are the owners of the reversionary interest estate of Lessor in and to the Demised Premises, and the Leasehold of Lessee in and to the Demised Premises created herein, respectively. Subject to and conditioned upon Lessee's obtaining Lessor's prior written consent to any transfer or assignment of Lessee's leasehold interest under this Lease, in the event of any conveyance or other divestiture of either Lessor or Lessee's interest in and to the Demised Premises, the grantor or the person who is divested of such interest (the "Grantor") shall be entirely freed and relieved of all covenants and obligations thereafter accruing hereunder, and the grantee or the person who otherwise succeeds to such interest shall be deemed automatically and by operation of this Lease to have assumed the covenants and obligations of the Grantor thereafter accruing hereunder, and until the next conveyance or divestiture of such interest the other party shall look solely to said grantee or

successor for the observance and performance of the covenants and obligations of the Grantor hereunder so assumed by said grantee or successor. Lessee shall attorn to any such grantee or successor of Lessor. Any provision hereof to the contrary notwithstanding, no assignment by Lessee of this Lease or any interest herein shall relieve or release Lessee of or from any of its liabilities or obligations hereunder.

25. **Quiet Enjoyment.** Lessor covenants that at all times during the term hereof, so long as Lessee is not in default hereunder, Lessee's quiet enjoyment of the Demises Premises or any part thereof shall not be disturbed by the act of any person whomsoever.

26. **Lessor's Right of Entry.** Lessor and its authorized agents and employees shall have the right from time to time, at Lessor's option, and upon reasonable prior notice to Lessee (except in an emergency), to enter and pass through the Demises Premises to examine the same and in the event Lessee is default and period for curing has expired then the Lessor may enter the premises to show them to prospective purchasers, fee mortgagees and others.

27. **Estoppel Certificates.** Each party shall at any time and from time to time during the term hereof, within ten (10) days after request by the other party, execute, acknowledge and deliver to the other party or to any prospective purchaser, assignee or mortgagee designated by the other party, a certificate stating (i) that this Lease is unmodified and in force and effect (or, if there have been any modifications that this Lease is in force and effect as modified and identifying the modification agreements); (ii) the date to which Rent has been paid; (iii) whether or not there is any existing default by Lessee in the payment of Rent or any other sum of money hereunder, and whether or not there is any other existing default by either party with respect to which a notice of default has been served, and, if there is any such default, specifying the nature and extent thereof; and (iv) whether or not there are any setoffs, defenses or counterclaims against enforcement of the obligations to be performed hereunder existing in favor of the party executing such certificate.

28. **Rights Cumulative.** All the rights and remedies of each party hereunder or pursuant to present or future law shall be deemed to be separate, distinct and cumulative, and no one or more of them, whether exercised for not, nor any mention of or reference to any one or more of them herein, shall be deemed to be an exclusion or a waiver of any of the others, or of any of the rights or remedies which such party may have, whether by present or future law or pursuant hereto, and each party shall have, to the fullest extent permitted by law, the right to enforce any rights or remedies separately and to take any lawful action or proceedings to exercise or enforce any right or remedy without thereby waiving or being barred or estopped from exercising and enforcing any other rights and remedies by appropriate action or proceedings.

29. **Surrender, Obligations Upon Expiration or Termination.**

(a) Lessee shall, on the last day of the term hereof or upon any termination hereof well and truly surrender and deliver up the Demised Premises into the possession and use of Lessor, without fraud or delay and in good order, condition and repair, ordinary wear and tear excepted, free and clear of all lettings and occupancies and free and clear of all encumbrances other than those existing on the date hereof and those, if any, created by Lessor.

(b) Lessee shall use reasonable efforts to encourage such personnel of the Facilities as Lessor may designate to become employees of Lessor or Lessor's assigns after the expiration or termination of the term hereof.

(c) Lessee shall have the duty to cooperate with the Lessor in procuring the transfer of licenses and certifications as necessary to keep the Demises Premises in operation following termination of this Lease.

30. **No Waiver.** No failure on the part of either party at any time to require the performance; by the other party of any term hereof shall be taken or held to be a waiver of such term or in any way affect such party's right to enforce such term, and no waiver on the part of either party of any term hereof shall be taken or held to be a waiver of any other term hereof or the breach thereof.

31. **Severability.** The invalidity or unenforceability of any particular provision hereof shall not affect the other provisions, and this Lease shall be construed in all respects as if such invalid or unenforceable provision had not been contained herein.

32. **Benefit.** This Lease shall inure to the benefit of and be binding upon the parties and their respective legal representatives, successors and assigns. The provisions hereof are solely for the benefit of the parties and their respective legal representatives, successors and assigns, and shall not be deemed or construed to create any rights for the benefit of any other person.

33. **Construction.** Whenever a singular word is used herein, it shall also include the plural wherever required by the context, and vice versa. The terms and conditions hereof represent the results of bargaining and negotiations between the parties, each of which has been represented by counsel of its selection, and neither of which has acted under duress or compulsion, whether legal, economic or otherwise, and represent the results of a combined draftsmanship effort. Consequently, the terms and conditions hereof shall be interpreted and construed in accordance with their usual and customary meanings, and the parties hereby expressly waive and disclaim, in connection with the interpretation and construction hereof, any

301

rule of law or procedure requiring otherwise, specifically including but not limited to, any rule of law to the effect that ambiguous or conflicting terms or conditions contained herein shall be interpreted or construed against the party whose counsel prepared this Lease or any earlier draft hereof.

34. **Entire Agreement; Written Modifications.** This Lease contains the entire understanding between the parties with respect to the subject matter hereof; all representations, promises, and prior contemporaneous understanding, between the parties with respect to the subject matter hereof are merged into and expressed in this Lease; and any other understandings between the parties with respect to the subject matter hereof are hereby canceled. This Lease shall not be amended, modified or supplemented without the written agreement of the parties at the time of such amendment, modification or supplement.

35. **Governing Law.** This Lease shall be governed by and subject to the laws of the State of Mississippi.

36. **Captions.** The captions herein are for convenience and identification purposes only, are not an integral part hereof, and are not to be considered in the interpretation of any part hereof.

37. **Notices.** All notices and other communications hereunder shall be in writing and shall be deemed to have been duly given if sent by certified or registered mail, return receipt request, postage prepaid, addressed as follows:

To Lessor:

Board of Supervisors of Choctaw
Choctaw County, Mississippi
P. O. Box 250
Ackerman, Mississippi 39735
Attention: President
Phone: (662) 285-6329

With Copy To:

Joe C. Griffin
Attorney at Law
1030 West Main Street
P. O. Box 237
Ackerman, Mississippi 39735
Attorney for Board of Supervisors of Choctaw County, MS
Phone: (662) 285-6080

To Lessee:              Brandywine Health Services of Mississippi, Inc.
                           148 West Cherry St.
                           P. O. Box 1039
                           Ackerman, MS 39735
                           Jeff Morse, President
                           Phone: (662)285-6235

With Copies To:         John Richard Barry
                           Bourdeaux & Jones
                           505 Constitution Avenue
                           P. O. Box 2009
                           Meridian, MS 39302-2009
                           Attorney For Lessee
                           Phone: (601)693-2393

or to such other address as shall be furnished in writing by either party to the other party.

      38.    **Counterparts.**      This Lease may be executed in separate counterparts, each of which when so executed shall be an original, but all of such counterparts shall together constitute but one and the same instrument.

      39.    **Costs of Enforcement.**    If any action is instituted in connection with any controversy arising out of this Lease, the prevailing party shall be entitled to recover, in addition to costs, such sum as the court may adjudge reasonable as attorneys fees in such action and on any appeal from any judgment or decree entered therein.

      40.    **Cooperation.**      Lessor shall cooperate with Lessee in connection with any and all efforts by Lessee to secure the lawful benefits of grants, governmental aid or assistance payments or supplements or designation of the Facility as preferred status or preferred provider or other beneficial designation for purposes of enhanced reimbursement or otherwise.

      41.    **Additional Stipulations.**    The following additional stipulations of Lessee shall be deemed part of this Lease:

      (a)    Lessee and Lessor acknowledge and agree that the main purpose of this agreement is that Lessee shall operate the following medical facilities on the demised property, to-wit: Nursing Home, acute care hospital, with laboratory and x-ray, an emergency room (on a 24-hour day basis), and outpatient treatment services. Lessee further agrees to operate the Nursing Home immediately, open acute care hospital with laboratory and x-ray within ninety (90) days of licensure, and open the 24-hour

emergency room within 120 days hereof. Lessee further acknowledges and agrees that the cessation of operation, once begun, of any one or more of the herein mentioned operations for a period of thirty (30) days will constitute a default of Lease that must be cured on the terms of any other default. In addition, limited surgical services shall be provided at or from the facility. Lessee shall also have the right to provide these and other services from the clinics and other locations operated by Lessee.

(b) Lessee shall have the right, subject to Governmental Requirements to convert a portion of its Licensed Hospital Bed Capacity into Licensed Nursing Home Bed Capacity Geriatric Unit, Extended Care or like type care and vice versa; provided, however, that Lessee shall at all times furnish a minimum Licensed Hospital Bed Capacity of at least ten (10) beds. Lessee shall also have the right, subject to applicable Governmental Requirements, to expand, contract or discontinue the services furnished at the Clinics.

(c) Lessee and Lessor acknowledge and agree that the Lessee shall assume the operation and responsibility of providing emergency ambulance service on or before the first anniversary date of this lease agreement.

(d) Lessee and Lessor acknowledge and agree that Lessee shall assume the liability for the outstanding bank note on the Bounds Clinic and the repayment of funds to HCFA from prior audits. Lessee and Lessor further understand and agree that future audits by HCFA which establish overpayments to the facility, which must be repaid, will be the responsibility of the operator-Lessee of the facility, and not a liability of the owner-Lessor.

(e) Lessor and Lessee hereby further acknowledge and agree that any dispute or disagreement which might arise between the parties will be disposed of, if litigation is necessary, in the courts of Choctaw County, Mississippi.

(f) Notwithstanding any contrary provision here, Lessee does not assume and shall not be required to pay principal, interest or debt service relating to any indebtedness, whether secured or unsecured, arising from the issuance of bonds and the loan of the proceeds of such bond issue for the acquisition construction, or financing of the Facility (herein referred to as the "Facility Debt"). Lessor shall pay the Facility Debt and all principal, interest or other debt service payments thereon, as and when such payments become due and payable.

**IN WITNESS WHEREOF**, the parties have executed this Lease as of the day and year first above written.

304

**LESSOR:**

**BOARD OF SUPERVISORS OF CHOCTAW COUNTY, MISSISSIPPI**

**BY:** Robert K. Bowie
**ITS: PRESIDENT**

**ATTEST:**

**BY:** Don Threadgill
**CHANCERY CLERK**

**LESSEE:**

**BRANDYWINE HEALTH SERVICES OF MISSISSIPPI, INC.**

**BY:** Jeffrey A. Moore
**ITS: PRESIDENT**